No. 16,857.

## The Cincinnati, Wabash and Michigan Railway Company *v.* The City of Anderson.

RAILROAD.—*Extending Street Over Railroad Yards Containing Switches, Engine House, etc.—Injunction.*—If, to extend a street as projected over the yards of a railroad company, containing side tracks, engine house, water tank, coal dock, etc., would not only increase the hazards of the business, but would include within the limits of said street two stalls of said roundhouse and a considerable portion of the coal dock, and would not permit the use of the water tank, without encroaching upon the street, the land can not be thus appropriated for street purposes, and such threatened appropriation may be enjoined.

SAME.—*Use of Ground for Yards, Engine House, Coal Dock, etc., a Public One.—When More than One Public Use May be Made of the Same Land.—When Not.*—The use of the ground by the railroad for the purposes above mentioned is a public use, and where the use of the ground for railroad purposes and for street purposes may coëxist without impairment of the first use, it may be appropriated to the use of both; but where such uses can not coëxist, or where the first use is materially impaired or destroyed, the second public use will be denied.

From the Delaware Circuit Court.

*C. E. Cowgill, J. T. Dye, B. K. Elliott* and *W. F. Elliott,* for appellant.

*F. P. Foster* and *H. C. Ryan,* for appellee.

HACKNEY, C. J.—This was a suit by the appellant to enjoin the extension of Seventh street, in said city, from the east line of the appellant's right of way westward across the main track, and five side tracks in appellant's yards. Within said yards were an engine house of brick and stone, containing six stalls, and being sixty feet deep, eighty feet long in front, and one hundred and forty feet long in the rear; in front of this building was a turn table from which there were six tracks extending into said engine house, and connecting with six stalls

therein.   In said yards was also a water tank from which locomotives were supplied with water, and also a coal dock, constructed from timbers and lumber, the same being twenty-three feet wide by eighty-six feet in length, and from which the locomotives of the appellant were supplied with coal.  The various side tracks within said yards were used for the storage of freight and passenger cars, and for making up trains, and for reaching said water tank, coal dock, turn table and round house. Said engine house was not large enough for the business of the company, and additions were contemplated.

To extend said street as projected would not only inconvenience the appellant in the use of its yards, by meeting the uses of the street by the public and increasing the hazards of its business, but it would take within the lines of said street two of the stalls of said roundhouse and a considerable portion of said coal dock, and would not permit the use of said water tank without encroaching upon said street slightly.   Immediately south of the projected street parallel with said tracks and a part of said yard the appellant owned ground upon which such water tank, coal dock, turn table and round house could have been located, and with changes in some of the side tracks mentioned could have been used as conveniently and practicably with the same advantages, excepting the necessity of keeping said projected extension free from standing cars, and the said added hazards by reason of the crossing and recrossing by the public of the appellant's said tracks.

That the uses for which the appellant employed the strip proposed to be taken for the street crossing, were of a public character, and that they could not be appropriated to the uses of a public street, if to do so would destroy or become inconsistent with the purposes for which they were so employed, is conceded by the parties.

The question upon which the controversy hinges, and upon which counsel have placed the case in argument, is this: Can these buildings and structures be destroyed and removed from their fixed location, and their use, where situated, be entirely thwarted, and their location applied to a new public use upon the showing that they may be rebuilt and conveniently and practicably used for the same purposes on other land of the company near to that now occupied?

Under the general law permitting cities to establish streets, we have no doubt of the implied power to extend streets transversly across the right of way of a railroad when in doing so the uses for which such right of way is employed are not materially injured or destroyed, and where such uses and those for a street may coexist without impairment of the first uses. But where such uses can not so coexist, or where the first use is materially impaired or destroyed, it is well settled in this State and elsewhere that the second public use will be denied. *Lake Erie, etc., R. W. Co.* v. *Town of Boswell*, 137 Ind. 336; *City of Ft. Wayne* v. *Lake Shore, etc., R. W. Co.*, 132 Ind. 558; *City of Seymour* v. *Jeffersonville, etc., R. R. Co.*, 126 Ind. 466; *City of Valparaiso* v. *Chicago, etc., R. W. Co.*, 123 Ind. 467; *Prospect Park, etc., R. R. Co.* v. *Williamson*, 91 N. Y. 552; *In re City of Buffalo*, 68 N. Y. 167; *In re Boston, etc., R. R. Co.*, 53 N. Y. 574; *Albany, etc., R. R. Co.* v. *Brownell*, 24 N. Y. 345; *Milwaukee, etc., R. W. Co.* v. *City of Faribault*, 23 Minn. 167; *Hannibal, etc., R. R. Co.* v. *Muder*, 49 Mo. 165; *Mohawk, etc., R. R. Co.* v. *Artcher*, 6 Paige, 83; *St. Paul, etc., Co.* v. *City of St. Paul*, 30 Minn. 359; *New Jersey, etc., R. W. Co.* v. *Long Branch Comrs.*, 39 N. J. L. 28.

At the point of the crossing of the projected extension of Seventh street and the right of way of the appellant, there are other public uses existing than the mere main-

tenance of tracks for the transportation of passengers and freight or the storage of cars and the making up of trains. The turn table, the water tank, the engine house, the coal dock, are each and all not only generally essential to the business and successful operation of a line of railway, but in this instance they were made to serve two divisions of railway, each having a terminus at the city of Anderson, where locomotives were supplied with coal and water, and were housed when not in service. Not only were they essential, but it is not even suggested that they could be dispensed with. That they were of themselves, when connected with the operation of the railway, public uses, not only appears from their necessity to the successful operation of a railway, but from the numerous cases holding that for such uses real estate may be condemned and appropriated under general laws for the appropriation of real estate to railway uses. *In re New York, etc., R. R. Co.*, 77 N. Y. 248 (for freight and warehouses); *Low v. Galena, etc., R. R. Co.*, 18 Ill. 324 (paint shops, lumber and timber sheds); *Hannibal, etc., R. R. Co. v. Muder, supra*, and *Chicago, etc., R. R. Co. v. Wilson*, 17 Ill. 123 (depot, engine house and repair shops); *In re New York, etc., R. R. Co., v. Kip*, 46 N. Y. 546 (depots, car sheds, engine houses, etc.).

There are probably many other like cases, but we think there can be no doubt upon this conclusion, which finds added support from the cases expressly denying the right to condemn and apply to street crossings property of like character already in use for such purposes by railway companies. *City of Valparaiso v. Chicago, etc., R. W. Co., supra; City of Ft. Wayne v. Lake Shore, etc., R. W. Co., supra; Prospect Park, etc., R. R. Co. v. Williamson, supra; Milwaukee, etc., R. W. Co. v. City of Faribault, supra; St. Paul, etc., Co. v. City of St. Paul, supra; Winona, etc., R. W. Co. v. City of Watertown*, 56 N. W.

Rep. 1077 (S. Dak.); *New Jersey, etc., R. W. Co.* v. *Long Branch Com'rs, supra.*

The theory of the appellee, and that adopted by the circuit court, is that such buildings and structures are not indispensable for the reason that they may be conveniently located elsewhere, and after relocation the uses of the street and the railway may coexist.

This theory is not new, but, if adopted by any of the adjudged cases, the fact has not been discovered by us; on the contrary, numerous cases have denied it.

*In re New York, etc., R. R. Co.* v. *Kip, supra,* it was said: "It is claimed that there are other lands in the same vicinity, equally well adapted to the use of the applicant as those sought to be acquired by these proceedings, and which, possibly, might be acquired by purchase from the owners. But such objections to these proceedings are untenable. The location of the buildings of the company, is within the discretion of the managers, and courts can not supervise it."

In *New York, etc., R. W. Co.* v. *Metropolitan, etc., Co.,* 5 Hun, 201, it was said: "Upon the point that the lands proposed to be taken are not necessary, because it might be practicable for the respondents to lay their tracks upon their own lands by adopting another curve, we are not prepared to concur with the appellant's counsel. It is not a question of possibilities nor of strict practicabilities within the opinion of engineers. No route was ever surveyed for a railroad which was not open to such objections, and if the right to take lands was to be determined by conflicting evidence, whether, after all, the tracks might not, with greater or equal convenience, be laid elsewhere, the construction of a road would be attended with the most serious embarrassments. Reasonable necessity must be shown, but a reasonable discretion must be allowed to the officers who lo-

cate the tracks of a railroad, for it can not be presumed that the corporation is unnecessarily incurring heavy expenses in obtaining lands, when those it already has would answer its purpose."

In *Eldridge* v. *Smith,* 34 Vt. 484, it was held that "When land is taken for a legitimate railroad use by the railroad company, the judgment of the officers of the road, unless clearly beyond any just necessity, is regarded as conclusive." We may add that if round houses, water tanks, coal docks, or other necessary uses of a railway may be disturbed, and relocated, or their location destroyed, it becomes a matter of extreme difficulty, if not an impossibility, to discriminate between such right, and the right to require tracks to be removed for the benefit of other public uses; and, further, if the removal of such buildings and structures may be required to appropriate their location to other public uses, it would be difficult to determine why depots should not be subject to the same rule. Another difficulty in adopting the theory contended for by the appellee, is that the rule could not be made to depend upon the proximity of the old to the new location, for if the removal were required, and there was no ground for the new location in the immediate vicinity, public necessity in pressing its demand for a street crossing could insist with force that remote situations afforded equal or better facilities for the convenient and safe employment of the uses sought to be superseded.

Without legislative sanction, it is our opinion that such uses can not be destroyed upon the mere discovery that they may be enjoyed at some place other than the point of their location.

It is suggested that the act of March 6, 1891, Acts 1891, p. 122, purporting to authorize the removal of buildings and structures of railway companies from the lines of pro-

jected streets, and permitting the use of crossings at such points, grants the power sought in this case to have been exercised. The proceedings to condemn the crossing were instituted, and the reference of the matter to the city commissioners was as early as December 1, 1890, and said commissioners filed their report of meeting and examination in January, 1891; this suit was commenced, and the venue changed before the passage of said act. We are unable to find any reason or authority for the suggestion so made. There can be no pretense that any step was taken pursuant to said act. If the act should be considered as affecting the questions in this case it should probably be in the implication thereby, of the legislative determination that without the act no power existed to require the removal of such buildings.

In our opinion the circuit court erred in its finding and judgment, and the appellant's motion for a new trial should have been granted.

The judgment is reversed.

Filed Sept. 27, 1894; petition for a rehearing overruled Dec. 20, 1894.