## CITY OF TERRE HAUTE ET AL. *v.* EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY.

[No. 17,915. Filed Feb. 16, 1897. Rehearing denied Dec. 17, 1897.]

INJUNCTION.—*Municipal Corporations.—Extension of Street Over Railroad Right of Way.—Jurisdiction.*—An injunction will lie to prevent a city from extending a street over and across the freight yard and tracks of a railroad company already devoted to public use, where the city has no authority to make such extension. *p. 176.*

MUNICIPAL CORPORATIONS.—*Condemnation of Lands.*—Land once appropriated to a public use by a railroad company cannot be condemned by a city to inconsistent public uses, unless the statute expressly or by necessary implication authorizes such second appropriation. *p. 176.*

SAME.—*Railroads.—Condemnation of Right of Way for Streets.*—By section 3623, Burns' R. S. 1894 (Acts 1891, p. 122), cities are expressly authorized to lay out, extend, and open streets and alleys across the right of way and other lands of any railroad company, without regard to the use to which they were already devoted, however inconsistent therewith the second use might be. *pp. 176-178.*

SAME.—*Condemnation of Railroad Lands for Streets.—Assessment of Damages.*—Section 3623, providing for the condemnation of railroad right of way and grounds for streets, when construed with sections 3631-3634, Burns' R. S. 1894, provides an adequate method of assessment of damages for property so appropriated. *p. 179.*

CORPORATIONS.—*Special Charter.—Condemnation of Property.*—While the legislature may not amend or otherwise materially modify the special charter of a corporation unless the power is expressly reserved, yet the property of the corporation devoted to public use is subject to condemnation for a second use at the will of the legislature. *p. 180.*

City of Terre Haute *et al. v.* Evansville and Terre Haute R. R. Co.

EMINENT DOMAIN.—*Railroads.— Municipal Corporations.— Condemnation of Railroad Right of Way.*—The exercise of the power of eminent domain by a municipal corporation in the condemnation of the right of way and grounds of a railroad company operating under a special charter, for streets, under the authority of the State, is not an interference with the inviolability of contracts, for the reason that all contracts are made subject to the right of eminent domain. *p. 180.*

STREETS.—*Condemnation of Lands For.—City Commissioners.—Appointment.*—The use of the words circuit court in section 3629, Burns' R. S. 1894 (3166, R. S. 1881), in designating who should make the appointment of city commissioners, was intended to confer said jurisdiction upon the person who held the office of circuit judge, and not upon the court as a court. *p. 181.*

MUNICIPAL CORPORATIONS.—*Appointment of City Commissioners.— Constitutional Law.*—Section 3629, Burns' R. S. 1894 (3166, R. S. 1881), conferring the power upon judges of the circuit courts to appoint city commissioners, is not within the inhibition of article 3, of the State constitution, that no person charged with official duties under one of the departments of State government shall exercise any of the functions of another, except as in the constitution expressly provided. *pp. 181-186.*

CONSTITUTIONAL LAW.—*Practical Construction.*—Where a construction placed upon the constitution by the legislature has been acquiesced in by all of the departments of the State for over forty years, and a disregard thereof would destroy titles and impair the obligations of contracts, under the doctrine of practical construction such question will be regarded as settled. *p. 186.*

From the Vigo Circuit Court. *Reversed.*

*George E. Pugh, Piety & Piety, Stimson, Stimson & Condit,* for appellants.

*John E. Iglehart, Edwin Taylor* and *Davis, Reynold & Davis,* for appellee.

MONKS, J.—This is an appeal from a temporary injunction granted March 1, 1896, by the court below on motion of appellee, restraining appellant from taking any steps to extend Ohio street in the city of Terre Haute, across appellee's freight yard and fourteen tracks used for switching and storing cars and loading and unloading the same.

The question presented is one of jurisdiction. If the city officers had jurisdiction, injunction will not lie. But if the city had no authority to extend Ohio street across said freight yard and tracks already devoted to a public use, there was no jurisdiction, and injunction was an appropriate remedy. Section 3644, Burns' R. S., 1894; *City of Seymour* v. *Jeffersonville, etc., R. R. Co.*, 126 Ind. 466; *Tucker* v. *Sellers*, 130 Ind. 514, 521; *Bass* v. *City of Fort Wayne*, 121 Ind. 389, 392; *Smith* v. *Goodknight*, 121 Ind. 312; *Adams* v. *Harrington*, 114 Ind. 66, 71; *Caskey* v. *City of Greensburgh*, 78 Ind. 233.

It is also well settled that land once appropriated to a public use by a railroad company cannot be condemned by a city to inconsistent public uses, unless the statute expressly or by necessary implication authorizes such second appropriation. *Steele* v. *Empsom*, 142 Ind. 397; *Cincinnati, etc., R. W. Co.* v. *City of Anderson*, 139 Ind. 490, and cases cited on p. 492; 3 Elliott on Railroads, sections 964, 966.

It is conceded by appellant that the proposed street, if located across appellee's freight yard and fourteen tracks used for switching and storing cars and loading and unloading the same, would be inconsistent with such uses and would materially injure and impair the same. Under the law as it existed in this State prior to March, 1891, it was held that there was no statute, expressly or by necessary implication, authorizing such second public use, if it destroyed or materially injured the first public use. *Cincinnati, etc., R. W. Co.* v. *City of Anderson, supra; Steele* v. *Empsom, supra.*

By an act of the General Assembly, approved March 6, 1891 (Acts 1891, p. 122), section 3623, Burns' R. S. 1894, it was provided that: "The common council shall have exclusive power over the streets,

highways, alleys and bridges within such city. *
* * * * * to lay out, survey, extend and open
new streets and alleys; * * * * * they may
cause buildings, structures or other things in the way
of any street or other public improvement to be taken
down, removed and appropriated, upon the payment
of damages as now provided by law; they may enter
upon, seize, appropriate, and condemn the right of
way, or other lands of any railroad company, person
or corporation passing through such city for street
or alley purposes, whether such lands be occu-
pied and used or not, upon payment of damages
as provided under and pursuant to the provisions
of an act entitled 'An act in relation to the lay-
ing out, opening, widening, altering and vaca-
tion of streets, alleys and highways, and for the
straightening or altering of water-courses by cities
of the state, and providing for the appointment of
commissioners to assess benefits and damages, pre-
sribing their duties and the method of procedure, and
providing for the collection of benefits and payment
of damages, and prescribing the duties of city officers
in relation thereto, and providing remedies in such
matters,' approved March 17, 1875, and the amend-
ments thereto."

By this act the power of cities was enlarged and
they were expressly authorized to lay out, extend, and
open streets and alleys across the right of way, and
other lands, of any railroad company without regard
to the use to which they were already devoted and
however inconsistent the second use might be there-
with. The only limitation upon the power of a city to
seize for public use property already devoted to a pub-
lic use by a railroad company is, that it shall be for
"street or alley purposes." If we should hold under

section 3623, Burns' R. S. 1894, that such property could not be devoted to a second public use if the same were inconsistent with the first public use, the amendment of 1891 would be ineffective for any purpose, because before the same was passed cities had the power to extend streets across railroad property when the second use would not be inconsistent with the first use. *City of Fort Wayne* v. *Lake Shore, etc., R. W. Co.*, 132 Ind. 558, 565, 566, 18 L. R. A. 367; *Cincinnati, etc., R. W. Co.* v. *City of Anderson, supra.*

It is clear, we think, that it was the intent of the General Assembly, by the act of 1891, to grant the power to cities, in regard to extending streets and alleys across the property devoted to public use by railroads, that they did not already possess, and authorize them to appropriate such property to a second public use, although the same would be inconsistent with the first. Statutes in substantially the same language as section 3623, *supra*, have been held in other states to grant such power. *Illinois, etc., R. R. Co.* v. *City of Chicago*, 138 Ill. 453, 28 N E. 740; *Chicago, etc., R. W. Co.* v. *City of Chicago*, 140 Ill. 309, 29 N. E. 1109; *Illinois, etc., R. R. Co.* v. *City of Chicago*, 141 Ill. 586, 30 N. E. 1044, 17 L. R. A. 530; *Illinois, etc., R. R. Co.* v. *City of Chicago*, 156 Ill. 98, 41 N. E. 45.

It is insisted by appellee that the act of 1891 provides no method for the assessment of adequate damages for the property sought to be appropriated. The statute authorizes the seizure of the right of way or other lands of a railroad company, whether the same are occupied or not, and such seizure is only authorized upon payment of damages assessed under the provisions of the act approved March 17, 1875, and the amendments thereto, being sections 3629-3657, Burns' R. S. 1894.

Sections 3631-3634, Burns' R. S. 1894, require the city commissioners to examine the property sought to be appropriated, and estimate its value, and in assessing and awarding damages and benefits, they shall estimate benefits and damages to all the real estate injuriously or beneficially affected. They shall assess upon each lot of land belonging to the same person the damages done thereto, and report the value of the property to be appropriated, and the damages to property, where no part thereof is taken.

Section 3623, Burns' R. S. 1894, is to be construed in connection with said sections, and when so considered "buildings, structures or other things" on the right of way or other lands of a railroad company, in the way of the opening or extension of any street, may be taken down, removed, and appropriated, upon payment of damages to be assessed under the provisions of the act of 1875 and the amendments thereof, section 3629-3657, *supra*. The provisions of these sections are as broad and more definite and certain than the statute concerning the seizure of property for railroad purposes, under which ample damages have been allowed. *Evansville, etc., R. R. Co.* v. *Swift,* 128 Ind. 34; *Chicago, etc., R. W. Co.* v. *Hunter,* 128 Ind. 213; *Indiana, etc., R. W. Co.* v. *Allen,* 100 Ind. 409; *White Water Valley R. R. Co.* v. *McClure,* 29 Ind. 536; *Grand Rapids, etc., R. R. Co.* v. *Horn,* 41 Ind. 479; *Baltimore, etc., R. R. Co.* v. *Lansing,* 52 Ind. 229, and cases cited on page 233; Elliott on Roads and Streets, 191-207.

It is clear, we think, that the damages are not limited to the value of the real estate actually taken, but that by said sections ample provision is made for the assessment of all damages and their prompt payment in cases like the one at bar. Elliott on Roads and Streets, p. 191-207.

While the legislature may not amend or otherwise materially modify the special charter of a corpora-tion unless the power is expressly reserved (*Cincinnati, etc., R. R. Co.* v. *Clifford,* 113 Ind. 460), yet the property of the corporation devoted to public use is subject to condemnation for a second public use, at the will of the legislature. *Illinois, etc., Canal Co.* v. *Chicago, etc., R. R. Co.,* 14 Ill. 314; *Newcastle, etc., R. R. Co.* v. *Peru, etc., R. R. Co.,* 3 Ind. 464, 468; *Lafayette Plankroad Co.* v. *New Albany, etc., R. R. Co.,* 13 Ind. 90; *West River Bridge Co.* v. *Dix,* 6 How. (U. S.) 507; *Enfield, etc., Co.* v. *Hartford, etc., R. R. Co.,* 17 Conn. 454.

It is true as claimed by appellee that its special charter is a contract with the State, but it is subject to the right of eminent domain which remains in the State. The exercise of this power by a state or under the authority of the state is not an interference with the inviolability of contracts, for the reason that all contracts are made subject to the right of eminent domain. *West River Bridge Co.* v. *Dix, supra; Richmond, etc., R. R. Co.* v. *Louisa R. R. Co.,* 13 How. (U. S.) 71; *Greenwood* v. *Freight Co.,* 15 Otto 13, 22; *Milner.* v. *New Jersey R. R. Co.,* 6 Am. Law Reg. 6; *Planters' Bank* v. *Sharp,* 6 How. (U. S.) 301, 330–331; *Ashuelot R. R. Co.* v. *Elliot,* 58 N. H. 451, 456; *Enfield, etc., Co.* v. *Hartford, etc., R. R. Co., supra; Beekman* v. *Saratoga, etc., R. R. Co.,* 3 Paige, 45, 73; 22 Am. Dec. 679; 3 N. Y. Ch. (L. R. A. ed.) note p. 45; *Murphy* v. *Beard,* 138 Ind. 560, 564.

The assessment of damages and benefits in the open-ing, laying out and extending of streets and alleys is committed by the act of 1875 to five persons called city commissioners, appointed by the judge of the cir-cuit court of the county. Section 3629, Burns' R. S.

1894 (3166, R. S. 1881). The words circuit court used in the act of 1875 in designating who should make the appointment of city commissioners was intended by the legislature to confer said jurisdiction upon the person who held the office of circuit judge, and not upon the court as a court. *In re Johnson,* 12 Kansas 102. This body appellee insists is unconstitutional, for the reason that it is an attempt to confer executive power upon the judiciary, which is inhibited by article three of the constitution, which divides the power of the state government into three departments, and provides that no person charged with official duties under one department shall exercise any of the functions of another, and for the further reason that the appointment of city commissioners is an invasion of the right of local self government.

Article three of the constitution makes the power of each department exclusive and independent of the power of either of the others. The object is to secure absolute independence in each department from the encroachment of the other. The words "shall exercise any of the functions of another," mean that one shall not exercise any of the powers, jurisdiction, or authority of the others.

It is not a function of the executive or legislative department of the state government to appoint city commissioners, and when a circuit judge appoints city commissioners he is not exercising any function of either of said departments. Neither are the city commissioners when appointed a part of either the executive or legislative department of the state government, nor do they exercise any of the functions of either of said departments.

While the city commissioners do not constitute a court, yet their duties are quasi judicial and their powers have been likened to the powers and duties of

an *ad quod damnum* jury. *City of Elkhart* v. *Simonton,* 71 Ind. 7. Their powers and duties are more of a judicial than an executive or administrative character. The appointment of city commissioners is not a judicial act. A judicial officer may, by authority of law, perform other than judicial acts; but when performed they do not become judicial, because they were performed by a judicial officer. A circuit judge is authorized to take acknowledgment of deeds, solemnize marriages, certify as to qualifications of a notary public, appoint trustees of savings banks and appoint two members of the county board of review, and yet no one would claim that in performing these acts he exercises judicial functions.

The third article of the California constitutions of 1863 and 1879 is subsantially the same as the third article of the constitution of this State.

In *Staude* v. *Election Commissioners,* 61 Cal. 313, it was held that a statute empowering and requiring the judges of three judicial districts to meet and choose three citizens of San Francisco, householders of good repute, who should constitute a board of police commissioners, was not open to the objection, that the judiciary of the state could not be charged with the duties or powers prescribed because of the third article of their constitution. The court held that said powers conferred on the district judges, did not come within the constitutional inhibition.

In *People* v. *Provines,* 34 Cal. 520, the legislature had provided that the police judge should be a member of the board of police commissioners, which board was authorized to appoint and remove police officers. It was insisted that the police judge had no authority to participate in the appointment of policemen, for the reason that such duties belonged to the executive department of the government, and that a judicial officer

could not, therefore, exercise the same under said third article of the constitution. The court held that the police judge had the right to act as a member of said board of police commissioners, for the reason that there was nothing in said article of the constitution which prohibited a judicial officer from exercising functions not in their nature judicial, if they did not belong to either the legislative or executive departments. See, also, *People* v. *Bush*, 40 Cal. 344.

This court held in *Waldo* v. *Wallace*, 12 Ind. 569, that the mayor of a city possessed executive, administrative, and judicial powers, but that his executive and administrative duties are not within the executive and administrative department of the state government, and that he might discharge such duties at the same time without violating article three of the constitution, and that a judge will be not less a judicial officer because some duties he may perform are administrative in their character. The following cases are to the same effect. *In re Guerrero*, 69 Cal. 88, 10 Pac. 261; *People* v. *Bush, supra; Uridias* v. *Morrill*, 22 Cal. 473; *Santo* v. *State*, 2 Iowa, 165, 220, 63 Am. Dec. 487, 516.

In giving to circuit judges, the power to appoint city commissioners, the legislature did not in any way infringe upon the right of local self government. Their appointment is not a matter of local concern, nor are they instrumentalities of local government. To that body is given the power of assessing the damages of one whose property is taken for public use under the power of eminent domain. The right of eminent domain belongs to the State, and is to be exercised in the manner and by means of the instrumentalities prescribed by the legislature, restrained only by the provisions of the constitution. When the legislature has the power over a subject, it is the sole judge

of the means that are necessary and proper to accomplish the object it seeks to attain. *State, ex rel., v.* *Kolsem,* 130 Ind. 434, 442. While the appointment of the city commissioners is not a legislative function, under our constitution, yet the power to name the persons or functionaries who shall make the appointment is a legislative function. *French v. State, ex rel.,* 141 Ind. 618, 29 L. R. A. 113; *State, ex rel., v. Hyde,* 129 Ind. 296.

The legislature has again and again, beginning with the time the present constitution took effect, conferred powers upon judges other than those of a strictly judicial character. At the first session of the legislature held under the present constitution, the following powers were given to judges. Acknowledgment of deeds, 1 R. S. 1852, p. 235, section 18, re-enacted in 1859, section 3352, Burns' R. S. 1894 (2933, R. S. 1881); acknowledgment of deeds, to solemnize marriages, certify depositions and act as an accountant, 2 R. S. 1852, p. 22, section 35; assent to indentures of apprenticeship, 1 R. S. 1852, p. 363, section 4, section 7300, Burns' R. S. 1894; to solemnize marriages, 1 R. S. 1852, p. 361, section 3, reenacted in 1857, section 7291, Burns' R. S. 1894; certify to qualifications of notary public, 1 R. S. 1852, p, 377, section 1, reenacted in 1855, section 8035, Burns' R. S. 1894; take and certify depositions, 2 R. S. 1852, p. 84, section 245, re-enacted in 1881, section 422, Burns' R. S. 1894; organization of corporations, 1 R. S. 1852, p. 239, section 3429, Burns' R. S. 1894; to examine the clerk's office and report in writing the manner in which the books and papers are kept, 2 R. S. 1852, p. 8, section 7937, Burns' R. S. 1894; to appoint city commissioners, 1 R. S. 1852, p. 216, section 581, reenacted in 1857 (Acts 1857, p. 661), reenacted in 1875, section 3629, Burns' R. S. 1894.

Since the first session of the legislature, under the present constitution, powers of the same kind have been from time to time given to judges by the law making power: To enable persons whose wives are insane to convey real estate, Acts 1857, p. 82, sections 3386, 3387, Burns' R. S. 1894; to assent to conveyances by infant married women, Acts 1861, p. 154, sections 3360-3362, Burns' R. S. 1894; to certify to certain facts necessary to the organization of savings banks and appoint savings bank trustees, Acts 1869, p. 104, sections 2942, 2946, 2947, Burns' R. S. 1894; to appoint the members of the county board of equalization, Acts 1881, p. 611, section 129, section 6397, R. S. 1881; to appoint two members of the county board of review to assess, review, and equalize the taxes, Acts 1895, p. 75, section 114.

The act for the incorporation of cities passed by the first legislature under the existing constitution authorized the common council to lay out, survey, and open streets and alleys, and empowered the judge of the common pleas court to appoint the city commissioners to appraise the damages and benefits for the opening of streets. 1 R. S. 1852, pp. 215, 216, sections 57, 58. The same provisions were reenacted in 1857 (Acts 1857, p. 61, sections 59, 60). The act concerning the incorporation of cities passed in 1867 contained the same provisions, except the duty of appointing the city commissioners was imposed upon the common council of the city. Acts 1867, p. 63, sections 61, 62. In the act of 1875, which is now in force, the power of appointing city commissioners was given to the judge of the circuit court. Acts 1875, p. 17, section 3629, Burns' R. S. 1894.

While the powers conferred by the foregoing acts of the legislature upon the judges in this State are not strictly judicial, yet they are not such as belong to

either the executive or legislative departments of the state government, and are not therefore within the inhibition of article three of the constitution.

Moreover, said acts of the legislature certainly present a case of practical construction of the constitution upon the question raised. For over forty years this practice adopted by the legislature has been continued, and acquiesced in by all the departments of the State, and a disregard thereof by the court at this time might destroy titles, impair the obligations of contracts and do much mischief. Under the doctrine of practical construction, it would seem that the questions presented concerning the appointment of city commissioners by a judge should be regarded as settled. *Hovey, Gov.,* v. *State, ex rel.,* 119 Ind. 386; *French* v. *State, ex rel.,* 141 Ind. 618, 628; *Fall* v. *Hazelrigg,* 45 Ind. 576, 585; *State* v. *McAlister,* 88 Tex. 284, 28 L. R. A. 523, 31 S. W. 187.

If any of the commissioners are interested, or have any property which is affected, provision is made for the appointment of commissioners *pro tempore.* Section 3630, Burns' R. S. 1894; *Bradley* v. *City of Frankfort,* 99 Ind. 417.

The constitutional right of a property owner to have his damages assessed by disinterested persons is satisfied if an appeal is given and an opportunity is thus provided for a trial by a judicial tribunal. *Bass* v. *City of Fort Wayne,* 121 Ind. 389, and cases cited.

The city council had jurisdiction of the proceedings to extend Ohio street across appellee's freight yard, and it follows therefore that injunction will not lie.

The order granting a temporary injunction is reversed.