CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellant, v. CITY OF MASON CITY.

**Eminent domain:** CONDEMNATION OF RAILWAY GROUNDS FOR STREETS.
1 A city has power to condemn land for the extension of a street over depot grounds owned and used by a railway company for a public purpose, where the same is not inconsistent with its use by the company, even though it will be necessary for the company to make slight changes in its track or appurtenances.

**Same:** DISCRETION OF MUNICIPALITY. The discretion of city authorities in establishing a street by which land may become available
2 for residence or business purposes will not be interfered with by the courts, unless it may be in a case of clear abuse; and their action in this regard will not be questioned on the ground that it is in conflict with public interest.

*Appeal from Cerro Gordo District Court.*—HON. C. H. KELLEY, Judge.

FRIDAY, MARCH 15, 1912.

IN a proceeding instituted by the defendant to condemn a right of way for the extension of Sixth street in that city across the depot grounds of the plaintiff, there was an award of damages by the commissioners, and the plaintiff brought the case into the lower court by an appeal. By agreement of parties the question was submitted to the lower court whether under an agreed statement of facts the defendant was entitled to have a condemnation; the determination of the damages being postponed until the right to condemn was thus determined.  The court held that the defendant had a right to condemn such right of way for a street, and from this ruling the plaintiff appeals.—*Affirmed.*

*Carr, Carr & Evans* and *Blythe, Markley, Rule & Smith,* for appellant.

*Witmer & Taylor,* for appellee.

McCLAIN, C. J.—The facts on which the finding of the court that as a matter of law defendant had a right to condemn a right of way for a street across plaintiff's depot grounds was predicated may be sufficiently understood for present purposes from the following brief statement:  Plaintiff's line of railway extends north and south through the western portion of the defendant city; the territory west of its right of way consisting at present of land heretofore devoted to agricultural purposes but now marked off into lots, blocks, and streets.  The owner is now proceeding to do such work as is necessary in grading and preparing the streets for public use, but no plat has been approved by the city or recorded.  For three-quarters of a mile along plaintiff's right of way there is now no street crossing the same by which this land may be reached from the city, which is compactly built up to the east of the right of way of the Chicago & Northwestern Railway Company, which lies east of and adjoining plaintiff's depot grounds and right of way.

Several streets are laid out across the Chicago & Northwestern right of way, terminating at the east line of the depot grounds of the plaintiff. Sixth street, which it is proposed to open through plaintiff's depot grounds, would furnish a convenient means of access from the city to the territory west of plaintiff's depot grounds and right of way which it is proposed to plat as an addition to the city. The proposed street would cross plaintiff's depot grounds about three hundred feet south of plaintiff's depot and about the same distance north of the south end of its yards and depot grounds, which are of the total length of about two thousand four hundred feet. Such street would cross the main track of the plaintiff and four switch tracks, one of which is used to some extent as a storage track but principally for the purpose of delivering cars for unloading in front of an oilhouse belonging to private parties situated on the depot grounds just south of the proposed street. Aside from the tracks described, the improvements already placed by the plaintiff company on its station grounds within the limits of the proposed street consist of a loading platform near what is called the "storage track" and a switch stand used in connection with the operation of the switch tracks. Access to plaintiff's depot and freight platforms is now had by driving west from the end of Sixth street over plaintiff's depot grounds on which there are plank crossings over two of the switch tracks, and the public has access to plaintiff's depot and freight platforms by the general and common use of portions of the depot grounds and yards.

The question presented is, briefly, whether the depot grounds of the plaintiff have already been so appropriated to one public use that a public street across such grounds can not be condemned for a public use. It is provided in Code, section 880, that cities and towns shall have power to condemn and take any lands within the territorial limits of any such city or town for establishing or extending

1. EMINENT DOMAIN: condemnation of railway grounds for streets.

streets, and in the case of *Chicago, M. & St. P. R. Co. v. Starkweather*, 97 Iowa, 159, it was held that, under a statutory provision then in force now covered by the section of the Code above referred to and not broader in its terms, a city might condemn a right of way across the depot grounds of a railway company for use as a public street, althought such depot grounds were already owned and used by the railway company for a public purpose. In that case it appeared that the proposed street extension would cross the main track and two side tracks of the railway company near its depot, and it was said that, although the statute did not in its terms provide for the taking of property already devoted to public uses, the taking sought by the city would not exclude the railway company "from its property nor interfere materially with its use, the operation of its trains, and the transaction of its business. The exclusive right to use the railway as such will remain in the plaintiff (the railway company), and the public will have the right to cross it at proper times and by suitable means." The correctness of that decision is not questioned by counsel for appellant; but they contend that the case is not applicable where the effect of the street extension and the public use of the street as extended would be to destroy or greatly impair the proper and convenient use of its depot grounds by a railroad company, and that this is a case of that character. They rely upon *St. Paul Union Depot Co. v. City of St. Paul*, 30 Minn. 359, cited in the *Starkweather* case, in which it was held that the defendant city could not condemn for street purposes a strip of land lying alongside the plaintiff's depot. The facts of that case do not make it analogous to the one before us. It appeared there that the strip of land was necessarily occupied almost continuously by vehicles and teams conveying baggage to and from the depot which must necessarily remain standing thereon during the loading and unloading of the baggage. This strip of land was only nineteen feet in width and quite circumscribed

for the purpose to which it was devoted. It was evident to the court that to keep open this strip for public use as a street for genral puposes and to keep free from obstruction for public travel would make impossible its continued use by the railroad company for the purposes for which it was being used, and that no other convenient place for loading and unloading baggage was available to the company. Other cases relied on for appellant are of similar character, involving an appropriation for street purposes of portions of depot grounds necessarily used by the railroad company in a manner wholly inconsistent with their use for public travel. See *New York, S. & W. R. Co. v. City of Patterson,* 61 N. J. Law, 408 (39 Atl. 680); *Prospect Park & C. I. R. Co. v. Williamson,* 91 N. Y. 552; *Atlanta v. Central R. & B. Co.,* 53 Ga. 120; *Winona & St. Peter R. Co. v. Watertown,* 4 S. D. 323 (56 N. W. 1077). The case of *Richmond, F. & P. R. Co. v. Johnston,* 103 Va. 456 (49 S. E. 496), seems to be inconsistent with the rule announced for this state in the *Starkweather* case *supra,* and need not be further noticed. The general rule seems to be that, if the use of the proposed street is not inconsistent with the continuing use by the railway company of its depot grounds for proper purposes, the power of the city to condemn a right of way for street purposes is not excluded (*Minneapolis & St. L. R. Co. v. Hartland,* 85 Minn. 76 (88 N. W. 423); *Battle Creek & S. R. Co.,* 99 Mich. 471 (58 N. W. 617), even though it may be necessary for the railway company to make slight changes in its tracks or other appurtenances. *Fohl v. Sleepy Eye Lake,* 80 Minn. 67 (82 N. W. 1097); *Chicago & N. W. R. Co. v. City of Morrison,* 195 Ill. 271 (63 N. E. 96). In *Cincinnati, W. & M. R. Co., v. City of Anderson,* 139 Ind. 490 (38 N. E. 167, 47 Am. St. Rep. 285) it was held that a street could not be thus located through the railroad company's yards so as to destroy roundhouses, water tanks, and similar buildings, and necessitate their location elsewhere. The conclu-

sion thus announced is without doubt sound, but it has no necessary application to the case before us. The tracks of the plaintiff may still be used . after a street crossing is established. One of the side tracks is spoken of as a storage track; but it does not appear that such use, so far as the portion crossed by the proposed street is concerned, is essential to the convenient and adequate use of the yards. It appears from a plat in evidence that there is already a plank crossing over this so-called storage track only a few feet away from the proposed street line, and by using the street crossing in place of this plank crossing the company will have substantially as much room on this track for storing cars without interference with usual travel as it now has. By a slight rearrangement of the switch tracks for which there seems to be ample room, the switch stand can be removed from the portion of the depot grounds proposed to be devoted to street purposes.

The loading platform constructed of plank and bridge timbers, and in dimensions fourteen feet in width north and south, and thirty feet in length east and west, will not materially interfere with the use of the street, which, as proposed, is at least sixty feet in width; but, if its removal should be necessary, there is nothing in the record to negative the plain inference from the plat that it could be at slight expense reconstructed north of the proposed street. It is further argued that the plaintiff company proposes additions to its side tracks, some of which will cross the proposed street; but we do not regard the necessity of constructing the usual crossing over side tracks as a necessary obstacle to the opening of a street across depot grounds, where no other serious obstacle is indicated. Without further elaboration, it is sufficient to say that under the record there is no necessary inconsistency between the continued use of its depot grounds by the plaintiff and the opening and use of the proposed street across such depot grounds.

There is some claim on the part of appellant that the

proceedings for the opening of the street are not in good faith, but for private use and benefit. The only showing in the record to support this claim is that the land west of plaintiff's right of way is not now occupied for residence or business purposes. Of course, it never will be so occupied so long as it is inaccessible from the city. The discretion of the city authorities in establishing a public way by which this land may become available for residence and business purposes can not be interfered with unless it may be in a case of clear abuse. No such abuse of municipal power is made to appear in this record. *Grafton v. St. Paul, M. & M. R. Co.,* 16 N. D. 313 (113 N. W. 598, 22 L. R. A. (N. S.) 1, 15 Ann. Cas. 10) ; *Minneapolis & St. L. R. Co. v. Hartland,* 85 Minn. 76 (88 N. W. 423).

*2. SAME: discretion of municipality.*

Indeed, this court has held that the statutes clothe the municipal authorities with the power to determine the wants and necessities of the public as to the establishment of streets, and that their action in exercising this power can not be questioned upon the ground that it is in conflict with public interest. *Cherokee v. Sioux City & I. F. Town Lot & L. Co.,* 52 Iowa, 279. And as supporting the same view, see *Barrett v. Kemp,* 91 Iowa, 296.

The judgment of the trial court is *affirmed.*