CHICAGO, M. & ST. P. RY. CO. v. INCORPORATED TOWN OF LOST NATION et al.

(District Court, S. D. Iowa, Davenport Division. February 19, 1916.)

1. COURTS ⊂⊃329—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

In a suit to enjoin the taking of railroad station property for street purposes, an allegation in the bill that the value of the matter in controversy exceeds $3,000 is sufficient to give a federal court jurisdiction, where, if the theory of complainant as to the measure of damages for the taking of the property should be sustained, the damage would exceed that sum.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 897; Dec. Dig. ⊂⊃329.]

2. COURTS ⊂⊃366(1)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

A construction placed upon a state statute by the highest court of the state is binding upon a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec. Dig. ⊂⊃366(1).]

3. EMINENT DOMAIN ⊂⊃47(5)—DELEGATION OF POWER TO MUNICIPALITIES—PROPERTY PREVIOUSLY DEVOTED TO PUBLIC USE.

Under the law of Iowa as settled by decision, while property devoted to one public use may be taken by another, where the two uses can coexist, a town or city cannot condemn for street purposes property already devoted to a public use by a railway company, when such taking

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

would require the destruction or removal of a depot building already located thereon.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 108–110, 115–120; Dec. Dig. ☞47(5).]

In Equity. Suit by the Chicago, Milwaukee & St. Paul Railway Company against the Incorporated Town of Lost Nation, Edward Christiansen, Mayor, and L. Balster, R. E. Cressey, J. E. Gilroy, and W. J. Schultz, Councilmen of said town, and William E. Dougherty, Sheriff of Clinton County, Iowa.

J. C. Cook, J. N. Hughes, and C. R. Sutherland, all of Cedar Rapids, Iowa, for complainant.

Wolfe & Wolfe, of Clinton, Iowa, for respondents.

WADE, District Judge. The plaintiff seeks to enjoin the taking of a portion of its right of way and depot grounds for street purposes. The validity of the ordinance establishing the street in controversy is disputed, and it is contended that, even if the ordinance is valid, the power of eminent domain granted to cities and towns by section 880 of the Code of Iowa does not enable the defendants to condemn for a public street the property of the plaintiff which is already owned and used for other inconsistent public-purposes. Upon the property sought to be condemned is located the depot of plaintiff; also tracks, permanent concrete platform, etc. The defendants insist that the ordinance is valid, and that under the circumstances the town has the power to condemn the property, and they also insist that this court has no jurisdiction, because it is claimed that the amount in controversy does not exceed the sum of $3,000.

[1] 1. Has the court jurisdiction? The exact amount, which in case condemnation of the property were made, might be assessed by a jury, cannot, of course, be determined in this action, and, if it could be determined, would not be decisive upon the question of jurisdiction. The amount in dispute, so far as it relates to the jurisdiction of the court, cannot be measured by the exact amount which is ultimately found due from one party to another. If it were, then the court would never have jurisdiction in a case where upon final hearing the court or jury finds that the plaintiff is not entitled to recover anything. It is the amount "in dispute, and not the amount actually due, as subsequently may be determined, which fixes the jurisdiction." Smith v. Adams, 130 U. S. 167, 9 Sup. Ct. 566, 32 L. Ed. 895; Holden v. Machinery Co. (C. C.) 82 Fed. 209; Armstrong v. Walters (D. C.) 219 Fed. 321; Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729.

In a recent opinion announced by the Supreme Court of the United States, November 15, 1915, in the case of Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 Sup. Ct. 30, 60 L. Ed. 174, Justice Pitney says:

"We are unable to discern any sufficient ground for taking this case out of the rule applicable generally to suits for injunction to restrain a nuisance, a continuing trespass, or the like, viz. that the jurisdictional amount is to be tested by the value of the object to be gained by complainant. The object of the present suit is not only the abatement of the nuisance, but (under the

prayer for general relief) the prevention of any recurrence of the like nuisance in the future. In Mississippi & Missouri Railroad Co. v. Ward, 2 Black, 485, 492 [19 L. Ed. 311], it was said: 'The want of a sufficient amount of damage having been sustained to give the federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.' The same rule has been applied in numerous cases, and under varying circumstances. Scott v. Donald, 165 U. S. 107, 115 [17 Sup. Ct. 262, 41 L. Ed. 648]; McNeill v. Southern Railway Co., 202 U. S. 543, 558 [26 Sup. Ct. 722, 50 L. Ed. 1142]; Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 336 [27 Sup. Ct. 529, 51 L. Ed. 821]; Bittermann v. Louisville & Nashville R. R., 207 U. S. 205, 225 [28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693]; Berryman v. Whitman College, 222 U. S. 334, 345 [32 Sup. Ct. 147, 56 L. Ed. 225]."

In determining the amount which must be ultimately paid if condemnation be permitted, a number of important questions will be involved with reference to the measure of recovery. It will have to be determined whether the value of the property shall be fixed, as contended for by the defendants, at the time the ordinance was passed, or, as contended by the plaintiff, at the time the property is ultimately subjected to use for a street. It will also have to be determined whether the recovery shall be the expense of removal of buildings, or the actual value of the improvements condemned. It will also involve the question as to whether the plaintiff is entitled to recover anything for the depreciated use of the right of way at this point, based upon the additional burdens which the crossing would impose with reference to speed, and guarding against accidents, and practicability of stopping trains without obstructing the streets, etc. These matters cannot be determined by this court in this case.

Under the evidence, and the theory advanced by counsel for the plaintiff, it cannot be denied that there is a dispute between the parties which exceeds the jurisdictional amount. Whether the theory of counsel for the plaintiff can be ultimately sustained is a question for some other court in a proper proceeding.

2. Is the ordinance valid? I have grave doubts about the validity of the ordinance. None of the provisions of the statute with reference to the passage, the signing, publication, and record of the ordinance, have been literally complied with. Examination of the cases in Iowa and in other states, however, discloses that the courts have almost uniformly upheld ordinances, even though no attempt was made to comply with the statutory requirements, and inasmuch as the defendants contend that this ordinance is valid, and I am disposing of the case upon another point, I will not review the objections to the ordinance or the authorities relating thereto.

[2, 3] 3. Has the incorporated town the power to condemn the property in controversy? This simply involves a construction of the statute of the state of Iowa. This statute, however, is in effect the same as statutes of many other states, and the question involved has been before the courts of Iowa, and numerous other states. Being a question of statutory construction, this court is bound by the decisions of the highest court of the state of Iowa as correctly interpreting the legislative will. Hamilton Gaslight Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Louisville Co. v. Mississippi,

133 U. S. 587, 10 Sup. Ct. 348, 33 L. Ed. 784; Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260.

The construction of this statute, as applied to the question in controversy, was considered by the court in C., M. & St. P. Ry. Co. v. Starkweather, 97 Iowa, 159, 66 N. E. 87, 31 L. R. A. 183, 59 Am. St. Rep. 404, and in Chicago Great Western Railway Co. v. Mason City, 155 Iowa, 99, 135 N. W. 9. In the Starkweather Case it is said:

"It is claimed by the appellant that depot grounds are essentially public property; that they may be acquired by the exercise of * * * eminent domain, when they cannot be otherwise obtained; and that for these reasons they cannot be taken by means of that right. It is undoubtedly true that the railway and station grounds are operated and used in part for public purposes. The right of eminent domain rests upon the theory that property taken by virtue of it is to be used for the benefit of the public, and it cannot be exercised for any other than a public object. Stewart v. Board, 30 Iowa, 19 [1 Am. Rep. 238]; 1 Redf. R. R. 228; 6 Am. & Eng. Enc. Law, 515. But it is not true that property devoted to one public use cannot be subjected to any other. It is within the power of the General Assembly to make the same property subservient to different public uses, or even to take it from one public use and devote it to another. Thus the streets of a town or city may be used for the purposes to which streets are ordinarily devoted, and also for railway purposes. Milburn v. Cedar Rapids, 12 Iowa, 256; Cook v. City of Burlington, 30 Iowa, 105 [6 Am. Rep. 649]. It was said in Evergreen Cemetery Ass'n v. City of New Haven, 43 Conn. 234 [21 Am. Rep. 643], to be unquestionable 'that the Legislature has the power to authorize the taking of land, already applied to one public use, and devote it to another.'"

After citing numerous authorities in support of the foregoing, the court further says:

"The doctrine is subject to the modification, however, that the power to take the property for the second public use, when such an appropriation would supersede or defeat the first one, must be given expressly or by necessary implication; and stress is placed on that modification by most of the authorities to which we have referred. The use of the strip of ground in question for railway depot purposes is in part for the public benefit, and therefore public. The use for which the town of Boyden appropriated it is also public; but the plaintiff has occupied and used it for railway purposes for many years, and its rights are prior, in point of time, to any which the town has acquired. It is true the grounds were not obtained for the plaintiff through the exercise of the right of eminent domain, but by a conveyance from its owner; but it may be conceded, for the purposes of this case, that the method by which title was acquired is immaterial, so long as the use made of the land is a public one. The question remains to be determined whether, under the statutes of this state, the town was authorized to extend its street in the manner attempted, against the will of the plaintiff. It is said in Suth. St. Const. § 388, that 'there is a broad distinction between acts which subvert or essentially impair a prior franchise or appropriation to a public use, and acts which permit a taking for a new public use, not involving an entire deprivation or diversion from the first use, but a joint use, so that after the second taking the same property serves still the original purpose, as well as the new, and the two uses are consistent. Under a general power to lay out and establish a railroad or highway, other railroads or highways may be crossed.'"

In Chicago G. W. Railway Co. v. Mason City, it is said, sustaining the reasoning in the Starkweather Case:

"The general rule seems to be that, if the use of the proposed street is not inconsistent with the * * * use by the railway company of its depot grounds for proper purposes, the power of the city to condemn a right of way

for street purposes is not excluded (Minneapolis & St. L. R. Co. v. Hartland, 85 Minn. 76, 88 N. W. 423; Battle Creek & S. R. Co. v. Tiffany, 99 Mich. 471, 58 N. W. 617), even though it may be necessary for the railway company to make slight changes in its tracks or other appurtenances. Fohl v. Sleepy Eye Lake, 80 Minn. 67, 82 N. W. 1097; Chicago & N. W. R. Co. v. City of Morrison, 195 Ill. 271, 63 N. E. 96. In Cincinnati, W. & M. R. Co. v. City of Anderson, 139 Ind. 490, 38 N. E. 167, 47 Am. St. Rep. 285, it was held that a street could not be thus located through the railroad company's yards, so as to destroy roundhouses, water tanks, and similar buildings, and necessitate their location elsewhere. The conclusion thus announced is without doubt sound, but it has no necessary application to the case before us."

It will be observed that the Supreme Court of Iowa has thus approved of the rule announced in Cincinnati Co. v. City of Anderson, 139 Ind. 490, 38 N. E. 167, 47 Am. St. Rep. 285, in the following language:

"It was held that a street could not be thus located through the railroad company's yards, so as to destroy roundhouses, water tanks, and similar buildings, and necessitate their location elsewhere. The conclusion thus announced is without doubt sound."

This expression of the Supreme Court seems to be decisive of this case. The depot is partly upon the portion of the depot grounds which the defendants seek to condemn for a street. The depot does not extend clear across the proposed street, but there is no claim that the street can be established and used without destroying or removing the depot.

An important distinction is urged by counsel for defendants, between the case at bar and other cases, because the depot had only been removed to its present location a short time prior to the passage of the ordinance, and because, as they express it, it was "purely a race between the town and the railway company to establish a street on one part, and to forestall the establishment on the other." If this case involved a question of equities between the parties, we might well consider the conduct of the railway after knowledge of the purpose or intent to pass the ordinance establishing the street. But it is not a question of equities; it is a question of legal rights.

The passage of the ordinance was not a taking of this property. "Private property shall not be taken for public use without just compensation first being made or secured to be made to the owner thereof." Const. Iowa, art. 1, § 18. Property cannot be taken until the damages have been assessed and the money paid. Code Iowa, § 2010. Even after the condemnation and assessment of damages, the town would be under no obligation to take the property; so that legally, at least, there was no duty resting upon the railway company to suspend work upon the depot or other improvements upon the passage of the ordinance.

It is a conceded fact that the depot was in its present location prior to the passage of the ordinance—a permanent foundation was not completed, but there is no question but what it was put in its present location with a view of permanency, and that it was legally speaking, permanently established, so far as location is concerned. So that the case really involves the question as to whether a town or city can condemn for street purposes property already devoted to a public use

by a railway company, when such taking would require the destruction or removal of a depot building already located thereon. The town has no power to compel the removal of the building; its only power is to condemn the property, building and all, and, except by mutual arrangement, the city, in order to acquire possession, would be compelled to destroy or remove that portion of the depot which would obstruct the establishment of the street. As above stated, the Supreme Court of Iowa has aligned itself with those cases which hold that a street cannot be "located through the railway company's yards so as to destroy roundhouses, water tanks, and similar buildings, and necessitate their location elsewhere," and by this construction of the Iowa statute this court is bound.

Much might be said about the equities of the parties. Counsel for defendants contend that the removal of the depot to its present location was with a view of preventing the establishment of the street; but, even if this were true, the company was exercising a legal right, and the intention with which a legal right is exercised, is not material. On the other hand the town council is the judge of the public necessity for the establishment of the street. As was held in N. Y. & Harlem Railway Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385, quoted in Cincinnati Co. v. City of Anderson, 139 Ind. 490, 38 N. E. 167, 47 Am. St. Rep. 285:

"The location of the buildings of the company is within the discretion of the managers, and courts cannot supervise it."

And in Eldridge v. Smith, 34 Vt. 484, it is said:

"When land is taken for legitimate railroad use by the railroad company, the judgment of the officers of the road, unless clearly beyond any just necessity, is regarded as conclusive."

The theory of counsel for defendants in this case is well expressed by the Supreme Court of Indiana in Cincinnati v. City, supra, in the following language:

"The theory of the appellee, and that adopted by the circuit court, is that such buildings and structures are not indispensable, for the reason that they may be conveniently located elsewhere, and after relocation the uses of the street and railway may coexist."

But the court says in answer:

"This theory is not new, but, if adopted by any of the adjudged cases, the fact has not been discovered by us."

It is not a qeustion of equities. It is not a question of what the company might do to accommodate themselves to this public improvement; it is a question of subjection to prior public use—a use which cannot coexist with the use by the town for the proposed street. That portion of the proposed street upon which the depot stands can be used only for one of two purposes, the depot or the street; and I find no justification in the authorities for holding that the prior use by the railway must yield. Where the right of way could be used for both purposes, even though it involved some readjustment of tracks or walks, the courts sustain the right to establish the street; but this is as far as the courts have gone in construing similar statutes, with

one or two possible exceptions, which have not been adopted by the Supreme Court of Iowa as a rule under the statutes of this state.

But, if the equities could be considered, the court could not overlook the fact that there is a public street extending to the railway right of way at a point 250 feet east of Main street (the street which by the ordinance is extended), and a street 250 feet west of Main street, either one of which could probably be extended across the depot grounds without serious impairment of the rights of the plaintiff, certainly with much less effect upon the plaintiff's right to the use of the depot grounds than the extension of Main street.

In St. Louis Co. v. City of Tulsa (D. C.) 213 Fed. 87, Campbell, District Judge, in denying the power to extend a street, which would not affect a permanent building, but which would affect tracks and switch stands, says:

"It will, of course, not be contended that the switch stands, or the lead or ladder track, can be successfully operated in the street. So far as they are concerned, it is manifest that if the street is opened up across the right of way, as desired by the city, they will have to be removed to another location, and to that extent, at least, the existence of the street will be inconsistent with the uses to which the railroad company is now devoting this property. No question is made, nor can be made, that this ladder track and the switch stands are necessary adjuncts to the railroad facilities for the handling of its business. The railroad company had a perfect right to place them where they are now; the matter of determining their location within the limits of the right of way is within the province of the proper officers of the company, in the exercise of their judgment as to where they will best serve the interest of the company in handling the business of its patrons, and presumably they were so located in the exercise of such judgment."

In this case the authorities are fully reviewed, and while the law under consideration was not in the exact language of the statute of Iowa, the principle discussed and the authorities quoted are directly in point under the Iowa statute as construed by the Supreme Court of this state. The opinion of Judge Pollock in C., R. I. & P. Railway Co. v. Williams (C. C.) 148 Fed. 442, also contains a valuable discussion of the leading cases upon the questions involved.

In my view, an injuction should issue herein as prayed.