*W. Friedly, J. E. McDonald* and *A. L. Roache,* for appellants.

*C. E. Walker,* for appellee.

--------◆--------

## CROSSLEY and Others *v.* O'BRIEN and Others.

VERDICT.— A verdict rendered in plain and defiant opposition to all the evidence ought instantly to be set aside.

HIGHWAY.—PUBLIC UTILITY.—In determining whether a proposed highway will be of public utility, though it is necessary to consider the wants of the particular neighborhood which desires it, yet the interests of the community outside of such neighborhood ought not to be disregarded.

SAME.—That cannot be deemed a highway of public utility which, if established, would render unfit for use another of much greater importance, (as, for example, an important line of railway,) or make the transit of passengers upon the latter seriously dangerous.

SAME.—Even if the ground used for a railway owned by a private corporation might be appropriated, in whole, or in part, for a common highway, under the right of eminent domain, yet it cannot be thus appropriated without being paid for.

HIGHWAYS.—DAMAGES.—In deciding whether a proposed highway will be of public utility, the damages which, if it were established, would have to be paid for the land appropriated, ought to be taken into consideration.

SAME.—APPEAL.—On a petition to the county board for a highway, viewers were appointed, who reported that the road would not be of public utility, and assessed damages in favor of certain of the persons through whose lands it would pass. The board decided that the road should not be established, unless the petitioners would pay such damages. The petitioners then took an appeal to the Court of Common Pleas.

*Held,* that under section 26 of the highway act, (1 G. & H. 364,) the appeal would lie.

SAME.—PRACTICE.—In a proceeding to establish a highway, an objection that the names of the persons through whose lands it will pass are not sufficiently denoted in the petition, is waived if not made before the appointment of viewers, especially if not made by such persons themselves.

SAME.—INCLOSURES.—If the viewers appointed to lay out a highway find an "inclosure" on the route petitioned for, the owner of which will not consent that the road shall be located through it, and they ascertain that a good route for a road can be otherwise had, they cannot locate the road through such inclosure; nor can they locate it upon such other route, if such route would be an essential departure from the route mentioned in the petition.

SAME.—When the report of the viewers is silent concerning such an inclosure, it will be presumed that there is none, or that the owner has given the consent required.

SAME.—PRACTICE.—When the case has been appealed and tried by a jury, and a general verdict has been rendered for the petitioners, the same presumption will be entertained.

SAME.—Where inquiries whether a highway would be of public utility, and what damages, if any, should be allowed, were submitted to the jury, but the remonstrants did not ask that any question touching inclosures should be submitted,

*Held,* that no such question could be afterward raised.

SAME.—JURISDICTION.—The course of proceeding required by the statute when inclosures interfere, is not pre-requisite to the jurisdiction of the county board to establish a highway.

SAME.—Jurisdiction will not be deemed to have been acquired by the county board to establish a highway, unless the facts necessary to give the jurisdiction appear affirmatively on the record.

SAME. — PRESUMPTION. — But when the jurisdiction has been obtained, the same presumption will be indulged in favor of the regularity of all subsequent proceedings as is entertained in ordinary cases in courts of general jurisdiction.

APPEAL from the *Hamilton* Common Pleas.

FRAZER, J. — This was a petition for the establishment of a public highway. Upon remonstrance, the board of commissioners appointed reviewers, who reported that the proposed road would not be of public utility, and, also, assessed the damages of *John Crossley* at $15, of *Gustavus H. Voss* at $5, and the *P. & I. R. R. Co.* at $100, and, thereupon, the board dismissed the petition, unless the petitioners would open and maintain the road at their own expense. The petitioners appealed to the Court of Common Pleas, where the question of the public utility of the road, and of the damages of the remonstrants, were submitted to a jury. The verdict was that the proposed road would be of public utility; that *Crossley's* damages would be $20, and that neither *Voss* nor the railroad company would be entitled to any damages. Over a motion for a new trial by the remonstrants, there was judgment upon the verdict, and the remonstrants appeal to this court.

This judgment must be reversed. The verdict, upon the subject of damages especially, seems to have been rendered in utter defiance of all the evidence, and the court below should not have hesitated an instant to set it aside. Upon that subject there was no real conflict, and the evidence itself appears on its face so reasonable and obviously true, that we cannot doubt our duty. As to *Voss*, the evidence was that between four and five acres of his land, renting for $4 per acre, would be occupied, and two thousand rails would be required to fence it. There is no evidence whatever that the road would benefit him. As to the railroad company, the proposed road is, for a distance of about two miles and three-quarters, to run ten feet from the east rail of the railroad, except where fills and grades will prevent, thus occupying thirty feet of their

right of way, the use of a part of which is absolutely necessary for railroad purposes. In many places, the ditch would occupy all the space between the railroad and the proposed highway, rendering it impossible to fence for the protection of the railroad track. The property and trains of the company would thus be constantly endangered, and the use of its railroad be dangerous to passengers upon it. There is nothing whatever to indicate that the railroad company would derive any advantage from the proposed highway, nor is it easy to conceive how that would be possible. In such a state of facts, a verdict finding that the company would sustain no damage whatever, is surely not to be permitted to stand, unless the court is, in all cases, wholly to refuse to exercise that authority over the verdict which it is as much its duty, in a clear case, to exercise, as it is to try the case at all.

Upon the question of the utility of the proposed road, it appeared that it would be dangerous to the public to use it so near to the railroad; that there were other routes, equally eligible in other respects, free from that objection, and which would not interfere with the corporate franchises of the railroad company. Now in determining the question of utility, it is, of course, necessary and proper to consider the wants of a single neighborhood. But we must also look beyond that. It would be absurd to shut our eyes to the interests of the whole community outside of the particular neighborhood which needs the sought-for highway, and it would be impossible to say that that was a highway of public utility which would be of great convenience to the people of a small given territory, but the establishment of which would either render unfit for use another highway of vastly greater public importance, or put in serious danger the many thousands of people having occasion to use that other more important way. In a legal sense, this railroad is such a public highway, though owned by, and operated

for the profit of, a private corporation. It may be true that it is subject to the great sovereign right of eminent domain, and that it might be taken, from end to end, for a common public road, if it can be supposed to be possible that the public would, on the whole, be benefited thereby. But, in the very nature of things, that state of facts would scarcely exist, unless no other practicable route for such common road could be had. And so, under like necessity, and where the interests of the great public required it, it may be that the franchises of the corporation, to a greater or less extent, might be taken for public use, and appropriated to a common highway. But, in either case, the property of the corporation, like that of a citizen, must be paid for. The constitution of the state requires it, and neither courts nor juries have any power or right, in law or morals, to say otherwise. And then the amount of such compensation becomes, in the very nature of things, an element to be considered in determining the question of public utility. Will it cost the public more than it will be worth? In the case in hand, the evidence discloses no fact tending to show any necessity whatever for interference with the franchises of the corporation. So far as there is any evidence upon that subject, (and the *onus* was upon the petitioners,) it tends to show that another and a better location for the road could be had, which would equally well accommodate the neighborhood. But it is needless to pursue the subject. Enough has been said to show that, in view of the well settled doctrines of the law touching the matter, the finding of the jury upon the question of public utility was clearly against the evidence.

Whether existing law authorizes, under any circumstances, the taking of any part of the property of the *P. & I. R. R. Co.*, for a common highway, it is not necessary now to determine. Assuming that it may be taken, (an opinion to which we incline,) we have indicated, in general terms, the circumstances which would authorize

it, and that they necessarily enter into the question of the utility of the proposed highway.

A number of other questions are agitated in the briefs, which may be shortly disposed of.

We are of opinion that the petitioners had a right, under the statute, to appeal from the action of the board of commissioners, as they did. 1 G. & H., § 26, p. 364.

The petition represented that the lands of "—— *Weaver*," and others named, would be affected by the proposed road. Inasmuch as it appears in the record, elsewhere, that the lands of three *Weavers, Michael, Benjamin* and *Peter*, all of whom are petitioners, would be affected, we think the defect in the original petition is cured; and, at any rate, objections of that character, if not made before the appointment of viewers, ought not, we think, to be entertained afterward, especially if made by other parties.

Section 16 of the highway act, 1 G. & H. 363, which prohibits the viewers from locating a highway through an inclosure, without the owner's consent, unless a good way cannot otherwise be had, is intended for the government of the viewers, and if they find such inclosure upon the route petitioned for, the owner of which does not so consent, and they find, upon examination, that a good route for a road can be otherwise had, the statute makes such facts an absolute bar to the establishment of a highway there, and the viewers are not possessed of a roving commission which gives them authority to locate a road in any place materially, if at all, different from that mentioned in the petition. The statute which requires them to locate it *on the best ground,* ought not to be held to authorize them essentially to depart from a definite route petitioned for. When the report is silent as to the interference of any such inclosure, it would be in accordance with the rule applicable in other cases, to assume that there was no such inclosure, or that the owner had given the requisite consent. When the case is appealed,

and tried by a jury, a general verdict for the petitioners ought to be regarded as covering that question. Where, as in this case, the questions of utility and of damages only are put to the jury, and the remonstrants do not ask that the question concerning inclosures shall be also submitted, we think it too late for them to raise any question about it afterward. The statute is silent as to the practice, and that which prevails in ordinary suits is not exactly applicable to the subject. But there must be a practice, and the sooner it is settled the better. It approaches very near to legislation to do it, and yet we cannot avoid it. That which we have indicated seems simple, furnishing an easy mode of reaching the merits, and giving little opportunity to defeat the establishment of highways, unless they ought to be defeated. We regard the course required by the statute, where inclosures interfere, as a thing not necessary to give jurisdiction, but a proceeding in the matter after the jurisdiction has been obtained. All the facts necessary to give jurisdiction in a road case must affirmatively appear by the record, else the jurisdiction will not be deemed to have been acquired. But, as to proceedings in the cause after jurisdiction to proceed has been obtained, the same presumption in support of their regularity will be indulged, as in ordinary cases with courts of general jurisdiction. This is a well established principle, and the conflict in the cases upon the subject, which must have perplexed every lawyer who has had occasion to examine them, has resulted from losing sight of the distinction between the facts required to entitle the tribunal to take jurisdiction, and those occurring afterward in the exercise of jurisdiction.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*G. H. Voss, T. A. Hendricks* and *O. B. Hord,* for appellants.

*D. Moss, J. O'Brien* and *B. K. Elliott,* for appellees.