GOLD ET AL. *v.* PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 17,323.   Filed March 28, 1899.   Rehearing denied Oct. 12, 1899.]

HIGHWAYS.— *Establishment.— Jurisdiction of Board of Commissioners.*—Section 6742 *et seq* Burns 1894 invest the board of county commissioners with plenary jurisdiction over the subject-matter in a proceeding to establish, locate, or change a public highway,

and the jurisdiction of the parties is obtained by publication or posting of the notices as therein provided.  *pp. 238-240.*

HIGHWAYS.—*Establishment.—Jurisdiction of Board of Commissioners. —Injunction.—Collateral Attack.—Railroads.*—Where the board of commissioners in a proceeding to establish a public highway had jurisdiction of the subject-matter of the proceeding, and acquired jurisdiction of the parties, as provided by statute, the same presumption must be indulged as to its proceedings and orders when assailed collaterally as attaches to the proceedings and judgments of a court of general jurisdiction; and before a railroad company can maintain an action to enjoin the establishment of a public highway across its yard and switching tracks, it must show that the order of the board locating the highway was absolutely void. *pp. 240-242.*

SAME.—*Establishment.—Jurisdiction of Board of Commissioners.— Appropriation of Right of Way of Railroad Company.*—The jurisdiction of the board of commissioners over the subject-matter in a proceeding, under the statute, to locate or change a public highway, is not devested by reason of the fact that such proposed location or change will appropriate to the use of such highway any part of the right of way of a railroad company.  *pp. 242-245.*

SAME.—*Establishment.—Appropriation of Right of Way of Railroad Company.—Injunction.—Eminent Domain.*—An action can not be maintained by a railroad company to enjoin the establishment of a public highway across its right of way, on the ground that the land had been already devoted to another and different public use, and that the establishment of the highway would amount to an appropriation of the land to a second public use inconsistent with the former; such question must be raised by remonstrance, and be determined by the board of commissioners, or by the circuit court on appeal.  *pp. 245-247.*

From the Marion Circuit Court.   *Reversed.*

*J. E. Scott, Ayres & Jones, H. C. Allen, J. W. Kern* and , *J. E. Bell,* for appellants.

*S. O. Pickens,* for appellee.

JORDAN, J.—On the 6th day of June, 1891, appellee, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, instituted this action, making the appellants, the trustee of Center township, Marion county, Ind., the supervisor of road district number two, and the board of public works of the city of Indianapolis, defendants thereto, whereby it

sought to enjoin the opening of a certain public highway crossing the tracks of appellee's railroad.  On May 3, 1892, an amended complaint was filed, which the court, on demurrer, adjudged to be sufficient; and, under the issues joined between the parties, a trial resulted in the court rendering a judgment perpetually enjoining the opening of said highway across the road and tracks of the appellee.

The principal question involved relates to the sufficiency of the amended complaint to entitle appellee to an injunction. The facts disclosed (among others) by the complaint, essential to the point in controversy, appear to be as follows:  Appellee is a duly organized railroad corporation, engaged as a common carrier, in operating lines of railroads in this and other states.  On November 14, 1889, William Rupp and other resident freeholders of Center township, Marion county, Indiana, presented to the board of commissioners of that county a petition asking for a change of a certain public highway; describing therein the beginning and route of the proposed change, and also giving in said petition the names of the several owners and occupants of the lands through and over which the proposed highway would run, and which would be affected by the proposed change.  Due notice of the presentation of this petition as required by the statute relative to proceedings instituted before a board of commissioners to locate, vacate, or change a public highway, seems to have been given in the manner and for the time provided.

On the 3rd day of December, 1889, at a regular term of the board of commissioners, the said petition came on before said board for hearing; and, after hearing the same, the board entered an order of record appointing three persons as viewers to view the proposed change of the highway; and said viewers were directed by the order of the board that if, in their opinion, the contemplated change of the highway would be of public utility, they mark and lay out the new road to the width of sixty feet, and that they report their doings to the board at its next regular session.

On March 13, 1890, at the regular session of the board, the viewers reported that the proposed change in the highway would be of public utility, and stated in their said report that they had marked and laid out said new way to the width of sixty feet, describing the same, and the course thereof, and stating also in the report the names of the several persons through whose lands the said highway, as marked and laid out by them, would run; the names of the owners and occupants of the land mentioned in said report being the same as those stated in the petition. It was thereupon ordered by the board that the highway, as described in the report, be opened to the width of sixty feet, and kept in repair, and that the county auditor notify the township trustee of such change, etc. A copy of this order, it seems, was transmitted to the proper township trustee, who caused a copy of the order to be entered at length upon the township record, and caused notice thereof to be given to the supervisor of road district number two, in which said highway was located.

In November, 1883, the Chicago, St. Louis & Pittsburgh Railroad Company, a duly organized and incorporated railroad company, owning and operating lines of railway at that time in this and other states, by virtue of the power of eminent domain entered upon and appropriated for its use, in the operation and maintenance of its line of railroad, a certain described strip of land, situated in said township and county, for the purpose of locating thereon yards and switching tracks. Soon after the acquisition of this ground by such railroad company, and prior to the beginning of said proceedings before the board of commissioners to change said highway, said company located and constructed on this ground a system of storage, transfer, switching tracks, etc., all of which were necessary and indispensable to the convenient use and successful operation of its railroad; and said land was used by said company for said purpose until the appellee succeeded to the rights and property of said railroad company, as hereinafter mentioned. Appellee has, from the

time of said succession until the beginning of this action, used this ground exclusively for said railroad purposes.

It appears that the proposed change in the proceedings before the board of commissioners was to locate the highway in question across and over this strip of land and the railroad track or tracks thereon, as then owned and maintained by said Chicago, St. Louis & Pittsburgh Railroad Company. The highway, as changed, was marked out and located by the viewers over and across this strip of land and the tracks of said company thereon, and was ordered by the board of commissioners to be opened accordingly.   To prevent appellants from enforcing this order by opening the highway in controversy over this land and the railroad tracks thereon, as now maintained by the appellee, the injunction herein was awarded.

It is further disclosed that the Chicago, St. Louis & Pittsburgh Railroad Company owned and occupied this land as a right of way from the time of its acquisition, in 1883, until the 1st day of October, 1890.   This company, as disclosed, was named and stated in the petition presented to the board in the highway proceedings as one of the property owners and occupants over whose lands the proposed change of the road was to be located, and also in the notice given in regard to said petition; and the report of the viewers made to the board also contained a similar statement.

On September 1, 1890, appellant Charles H. F. Mankedick, as supervisor of road district number two in said Center township, gave the said Chicago, St. Louis & Pittsburgh Railroad Company (at that time the owner and occupant of said land) a notice in writing to remove its fences situated thereon, on or before November 5th following, in order that the highway might be opened as directed by the board's order.   On October 1, 1890,—six months and over after the final order to open the highway in controversy was entered by the board of commissioners, and after the notice given by the supervisor, as mentioned, to remove the fences,—appel-

lee, by virtue of consolidation, succeeded to all the property rights and franchises of the said Chicago, St. Louis & Pittsburgh Railroad Company, including the ground and tracks over which said supervisor was proposing, under the order of the board of commissioners, to open the highway in question. After the final order of the board was made in said proceeding, but prior to the commencement of this action, a part of the land through which the proposed highway was laid out and ordered to be opened was annexed to the city of Indianapolis; and for that reason, it appears, the board of public works of that city was made a party defendant to the action. The complaint also alleges that said supervisor, under the order of the board and the notice given by him, threatens to open said highway across this land, and over and across the tracks and yards of appellee, as used and maintained thereon, and that he will do so, unless enjoined. It is also averred in the complaint that said highway, if opened, would not be of public utility, and that its opening will result in great and irreparable damage to appellee, and would so interfere in the use and operation of its railroad as to render the same useless, etc.

The proceedings to change the highway in question, before the board of commissioners, in the main, appear to be regular, and substantially in accord with the provisions of the statute conferring jurisdiction upon boards of commissioners relative to the laying out and change of public highways. Counsel for appellants insist that the order of the board of commissioners which the road supervisor was attempting to enforce by opening the highway across the ground and tracks in question is conclusive, and not open to a collateral attack. The learned counsel for appellee, in response to this insistence, says: "We have no contention with counsel, or with the authorities cited in support of their argument, that the proceedings of a board of county commissioners are conclusive against collateral attack, provided the board has jurisdiction over the subject-matter, and power to enter its order

or judgment. But our contention here is that the board of commissioners of Marion county did not have jurisdiction of the subject-matter, and had no power to make the order in respect to the alleged highway in question, and therefore the proceedings in question are null and void. This is no longer an open question in this court, for exactly this question has been expressly decided by this court in favor of our contention in five different cases, viz.: *Baltimore, etc., R. Co.* v. *North*, 103 Ind. 486; *City of Valparaiso* v. *Chicago, etc., R. Co.*, 123 Ind. 467; *City of Seymour* v. *Jeffersonville, etc., R. Co.*, 126 Ind. 466; *City of Ft. Wayne* v. *Lake Shore, etc., R. Co.*, 132 Ind. 558, 18 L. R. A. 367, 32 Am. St. 277; *Cincinnati, etc., R. Co.* v. *City of Anderson*, 139 Ind. 490." Continuing, counsel further says: "The decisions in these cases are grounded upon the rule that property once devoted to a public use cannot be again appropriated for another and different public use, where such second public use would destroy or materially impair the public use to which it is already devoted, unless the legislature of the State has expressly provided that this may be done. A general power is not sufficient. It must be express and affirmative. This rule is established law in many other states,"—citing cases.

The chief point relied upon by appellee's counsel is predicated upon the fact that the strip of land which the Chicago, St. Louis & Pittsburgh Railroad Company acquired as a right of way, by virtue of eminent domain, and, upon which it had located its tracks prior to the institution of the proceedings to change the highway, had already been appropriated to a public use, and hence, under the circumstances, the board of commissioners had no power or jurisdiction to locate the road across this right of way, and thereby subject it to a second public use. The solution of this question requires an examination of the statute relative to the location and change of public highways in proceedings before boards of commissioners. §6742 Burns 1894, §5015 R. S. 1881, §5015 Horner 1897, provides as follows: "Whenever twelve free-

holders of the county (six of whom shall reside in the immediate neighborhood of the highway proposed to be located, vacated, or of the change to be made) shall petition the board of commissioners of the county in which such highway is situate, for the location, vacation, or change of any highway, such board, if it shall be satisfied that due notice of such application has been given by publication three weeks successively in a newspaper published in the county, or by posting up notice in three of the most public places in the neighborhood of such highway or change, at least twenty days before the meeting of the board at which such petition is to be presented, shall appoint three persons to view such highway." §6743 (5016) prescribes, among other things, the duties of the viewers selected by the board, and directs that, after viewing the highway to be located or the change proposed, if "they shall deem the highway to be located or the change to be made of public utility, they shall lay out and mark the same on the best ground," etc. §6744 (5017) provides that the viewers shall make a report of their proceedings at the ensuing session of the board of commissioners, wherein they shall give a full description, by metes and bounds, of such location, change, or vacation of the highway viewed by them, etc. It is provided, by §6745 (5018), that if no objection be made to such proposed highway, vacation, or change, the board shall order the same to be opened and kept in repair, etc. The next section, being 6746 (5019), authorizes any person, through whose lands such highway or change may pass, who is aggrieved thereby, to remonstrate before the final action of the board is taken upon the report of the viewers, setting forth in such remonstrance his grievance, and thereupon the board is required to appoint other viewers. If the remonstrator will be damaged by the highway passing over his lands, this section provides a remedy; and if damages are awarded, either before the board, or on appeal to the circuit court, §6752 (5025) expressly forbids the opening of the highway until such damages are paid, or deposited in the

county treasury for the benefit of the party entitled thereto. §6750 (5023) authorizes any one or more freeholders of the county, residing along the proposed highway, to remonstrate against the contemplated location, vacation, or change of a highway on the ground that the same will not be of public utility. By §6754 (5027), any person aggrieved by the final decision or order of the board of commissioners in a highway proceeding may appeal therefrom to the circuit court. By §6742 (5015), *supra, et seq.*, original and exclusive jurisdiction to locate, establish, vacate, or change public highways situated outside of the limits of an incorporated town or city is lodged in the board of county commissioners. This tribunal, under the provisions of these statutes, is invested with plenary jurisdiction over the subject-matter in such proceedings; and jurisdiction of the parties is obtained by publication or posting the notices as prescribed by §6742 (5015), *supra.* Robinson County and Township Officers (2nd ed.) §331; *Chicago, etc., R. Co.* v. *Sutton,* 130 Ind. 405.

The complaint discloses that among the lands over which it was proposed to locate the highway was the right of way in question, which at the time the proceedings to change were instituted was owned and occupied by the Chicago, St. Louis & Pittsburgh Railroad Company, through and under which appellee claims its right and title thereto. This company, it also appears, was made a party to the petition in question, and was named therein, and also in the notice given and the report of the viewers, as one of the persons whose lands would be affected by the contemplated change. It also appears that the notice prescribed by the statute was given to all persons affected or concerned in such proceedings. Hence, under the circumstances, the jurisdiction of the board of commissioners over the person of appellee's predecessor cannot, in this action, be successfully controverted.

The subject-matter of the proceeding was to obtain a change of a public highway situated beyond the limits of an incorporated town or city in Marion county, Indiana, and, as

heretofore said, over this subject the board of commissioners of that county had original and exclusive jurisdiction. A court or other tribunal is said to be invested with jurisdiction over the subject-matter of a case when its jurisdiction extends to the class of cases to which the particular one belongs. *Chicago, etc., R. Co.* v. *Sutton,* 130 Ind. 405, and cases there cited; *Jackson* v. *Smith,* 120 Ind. 520. In the latter case, which was a collateral attack upon the proceedings of the common council of the city of Kokomo, in a matter relative to local improvements, in considering the question relative to the jurisdiction of the common council this court said: "The general conclusion which we here seek to deduce and apply is that our decisions (which, as we believe, may be vindicated on the soundest principle) declare that, where it appears that the case is one of a general class over which the tribunal has jurisdiction (that is, one within the subject of the tribunal's jurisdiction), the judgment is not absolutely void, if the particular subject was within the territorial jurisdiction of the court, and there was jurisdiction of the person, although the statutory requirements may not all have been complied with by the tribunal or its officers."

The question which would seem to be the test in cases collaterally assailing the jurisdiction of the board of commissioners over the subject-matter in proceedings to locate or change a public highway is: Had the board authority to act within the range of the general subject? If so, then there is jurisdiction, and the same presumption must be indulged as to its proceedings and orders when assailed collaterally as attaches to the proceedings and judgments of a court of general jurisdiction. *Chicago, etc., R. Co.* v. *Sutton, supra,* and cases cited; *Cauldwell* v. *Curry,* 93 Ind. 363; *Jones* v. *Cullen,* 142 Ind. 335, and authorities there cited.

To entitle appellee successfully to maintain this action, it must show that the order of the board locating the highway in question over or across the land and right of way in con-

troversy is absolutely void.    That this is the test is settled by
repeated decisions of this court.    *McIntyre* v. *Marine*, 93
Ind. 193; *Erwin* v. *Fulk*, 94 Ind. 235; *Adams* v. *Harring-
ton*, 114 Ind. 66.   In *McIntyre* v. *Marine, supra*, it is said:
"Boards of county commissioners have jurisdiction to locate,
vacate and change public highways in their respective coun-
ties.    In the location, vacation, or change of highways, ample
opportunity is afforded, either before the county board, or
upon appeal to the circuit court, for the settlement of all
questions relating to jurisdiction, public utility, and damages.
The proceedings of the county board in such case are invul-
nerable on collateral attack, such as is attempted in the pres-
ent case, unless the averment of facts in the complaint shows
that such proceedings are absolutely void."

The contention of counsel for appellee, however, is that
the board had no power or authority to order the proposed
change of the highway to be made across the right of way
and tracks of its predecessor, for the reason that this particu-
lar land had been already devoted to another and different
public use, and, under the circumstances as shown to exist,
this appropriation for the purpose of a public highway cross-
ing would destroy or materially impair its use for railroad
purposes.    Hence it is insisted in the argument that inasmuch
as there is no statute expressly conferring the right and au-
thority upon a board to locate or change the course of a
public highway over the right of way of a railroad company,
and thereby appropriate such land to a second public use
the board, in the proceedings in question, was without juris-
diction in this particular, and its order therein is open to a
collateral attack by the appellee.    This contention certainly
is not tenable.    We do not controvert the general rule as-
serted in the decisions of this court cited by appellee, to the
effect that where land is once appropriated, by virtue of the
doctrine of eminent domain, to an important public use, it
cannot again be devoted to another public use wholly incon-
sistent with the former, and which, under the circumstances

of the particular case, must necessarily supersede or destroy such former use, unless it is shown that the right to subject the land to the second appropriation or use is authorized by an act of the legislature, either expressly or by necessary implication.　That this rule is applicable, when properly invoked, to prevent the location and construction of streets or other public highways over or along the land and tracks of a railroad company, when such location and construction would necessarily supersede, or be destructive of, the necessary use of such land or tracks of the company in the operation of its railroad, is well affirmed by the authorities. *City of Ft. Wayne* v. *Lake Shore, etc., R. Co.*, 132 Ind. 558, 18 L. R. A. 367; *City of Terre Haute* v. *Evansville, etc., R. Co.*, 149 Ind. 174, 37 L. R. A. 189.

That the jurisdiction of the board of commissioners over the subject-matter in a proceeding, under the statute, to locate or change a public highway, is not devested by reason of the fact that such proposed location or change will appropriate to the use of such highway any part of the right of way of a railroad company, is recognized by the decisions of this court. *Crossley* v. *O'Brien*, 24 Ind. 325, 87 Am. Dec. 329. In this latter case it is said that the railroad company, when its property is so appropriated, must be paid, the same as any other person, and that such compensation, in the very nature of things, becomes an element to be considered in determining the question of the public utility of such highway.　The question, as stated by Judge Frazer, is, "Will it cost the public more than it will be worth?"　In Elliott, Roads & S. p. 169, it is said:　"A right to cross an existing public way with a street or road may often be implied where a right to longitudinally take the way would not be deemed to exist. * * * A grant of authority, expressed in general terms, to seize lands and property for the purposes of a road or street, will in most cases confer authority to construct the roads and streets across existing public ways, whether owned by public or by private corporations, but it will not confer authority to

lay the road or street longitudinally upon the existing way." This court, in the appeal of the *Lake Erie, etc., R. Co.* v. *City of Kokomo*, 130 Ind. 224, after quoting this same text, approved it as a statement of the correct doctrine; and the power of a city in this State, as a general rule, to lay out a street across the right of way of a railroad company, was in that case upheld. That the power to locate, lay out, and open streets or public highways carries with it the right or power to locate and construct them across railroad tracks, as a general rule, is sustained by the authorities. *City of Ft. Wayne* v. *Lake Shore, etc., R. Co.*, 132 Ind. 558, and cases cited on page 565; Mills, Em. Dom. §46.

The distinction between locating and constructing a highway or street across a railroad track or tracks, and locating and establishing it longitudinally upon the bed of the railroad, is one well recognized by the decisions of the higher courts. Under the right to cross the track of the railroad, it is said that nothing but a mere right of way will be acquired, and the two uses or rights may co-exist and be exercised, on the one hand by the railroad company, in the operation of its road, and upon the other by the public in using the highway. By §6743 (5016), *supra*, as heretofore stated, the viewers appointed by the board, if they find the location of the highway, or the change therein made, to be of public utility, are required to lay out the same *"on the best ground,"* etc. (Our italics.) This provision, when construed in connection with the other provisions of the same statute, must certainly be accepted and held to confer sufficient authority upon the board of commissioners to locate, if necessary, a public highway across the right of way and tracks of a railroad company.

In the appeal of *Little Miami, etc., R. Co.* v. *City of Dayton*, 23 Ohio St. 510, which was an action by a railroad company to enjoin the city of Dayton from extending a street across the lands of the company, the court, after recognizing the power of cities, under the general grant given, to

lay off, open, and extend their streets, when necessary, across railroads, said: "The power intrusted to the commissioners of counties, to lay off and establish roads and highways, is granted in equally general terms, no special provision being made for crossing railroads. But it can not be doubted that the commissioners have that power. The extension of streets and of roads and highways· across railroads is so evidently a matter of public convenience and necessity, that it must be presumed to have been in the contemplation of the legislature when the statutes referred to were enacted. The terms of the grant are, in each case, sufficiently broad, *prima facie,* to confer the requisite authority; and there is in such case nothing in the nature of the use to which the land has been appropriated by the railroad company, or in that to which it is proposed to subject it by the second appropriation, which requires us, upon any presumed intention of the legislature, to ingraft upon the general terms of the grant an exception which will prohibit such crossing. The two uses are not necessarily inconsistent, and in all ordinary cases, at least, may well stand together."

The objections that may be interposed, under the provisions of the statute, by a remonstrance in proceedings before boards of commissioners to locate or change public highways, perform the office of an answer to the petition, and raise issues to be determined before the board, and on appeal to the circuit court. *Schmied* v. *Keeney,* 72 Ind. 309. The remonstrator in such cases may appear and object to the sufficiency of the petition or notice, and to the competency of the viewers, and to the report of the latter, as not conforming to the requirements of the law.

The objector, under the statute, may challenge the public utility of the road, and demand damages to which he may be shown to be entitled. *Green* v. *Elliott,* 86 Ind. 53. In *Adams* v. *Harrington,* 114 Ind. 66, this court said: "Where notice of the presentation of a petition for a highway has been given according to law, all parties interested must, at

their peril, give attention to the proceedings which ensue; and if, in the ordinary course of events, any such party fails to receive actual notice of the petition, no cause is thereby afforded for the stay of proceedings by injunction. If irreparable damage is likely to be inflicted, that furnishes a cause for remonstrance against the establishment of the highway. §§5009, 5010, 5019 R. S. 1881; *Denny* v. *Bush*, 95 Ind. 315."

As a general rule, every court possesses the power of judging of its own jurisdiction, both as to the parties and the subject-matter of the action. Where the want of jurisdiction of an inferior court is not apparent, on the face of its proceedings, it follows, as a general proposition, that its judgment, on the question of its jurisdiction, either expressly or impliedly given, has the same binding effect upon the parties as has its decision on any other matter within its cognizance in such proceeding, and an error in this respect must be corrected in the same manner as other errors are authorized to be corrected. Van Fleet Coll. Attack, §§62, 63; *Evansville, etc., R. Co.* v. *City of Evansville*, 15 Ind. 395; *English* v. *Smock*, 34 Ind. 115, 7 Am. Rep. 215; *Stoddard* v. *Johnson*, 75 Ind. 20.

It is evident that one of the questions that appellee's predecessors might have interposed or raised before the board of commissioners, for its determination in the highway proceedings in question, was whether or not the board was ousted of its jurisdiction to locate the proposed highway over the right of way in controversy by reason of the fact that the two public uses could not lawfully co-exist at the same point thereon. It is certainly obvious that if the second use, to which it was proposed in that proceeding to subject the railroad's land or right of way, was so inconsistent with the public use, to which it had already been appropriated, as to materially impair, supersede, or destroy the same, that question was one to be determined by the board of commissioners, or by the circuit

court on appeal; and, under the circumstances, it cannot be reviewed in this collateral action.

If it could be said that the complaint in this case states facts sufficient to constitute a cause of action, it also states facts constituting a defense.   Therefore, under a well settled rule of pleading, it would be bad on demurrer.   *Behrley* v. *Behrley*, 93 Ind. 255.

That the board of commissioners, under the facts, had jurisdiction of the subject-matter, and also over appellee's predecessor, through which it claims its right and title to the land in dispute, and in whose shoes it must be deemed to stand, cannot be successfully controverted. . Therefore all questions or matters legitimately in issue, or which might have been put in issue in such proceeding by the parties thereto, must be presumed or considered as heard, determined, and settled under the final order of the board, and this action to enjoin its enforcement cannot be maintained.

It follows that the court erred in overruling the demurrer to the amended complaint, for which error the judgment below is in all things reversed, and the cause is remanded to the lower court, with instructions to sustain the demurrer to the complaint.   All concurring, except Hadley, J., who did not participate in this decision.