THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY
COMPANY v. BOARD OF COMMISSIONERS OF
JACKSON COUNTY ET AL.

[No. 18,439. Filed Dec. 11, 1900. Rehearing denied March 5, 1901.]

RAILROADS.—*Transfer of Property.*—*Drains.*—Where, in an action by
a railroad company to enjoin the construction of a ditch along its
right of way, it appears that the board of commissioners had juris-
diction in the proceeding over plaintiff's predecessor, from which
plaintiff derived its title to the property in dispute, plaintiff is bound
by the final action of the board in like manner as its predecessor
would have been bound thereby. *rp. 265, 266.*

EMINENT DOMAIN.—*Drains.*—*Appropriation of Railroad Right of
Way.*—The rule that when lands have been once taken by virtue of
the power of eminent domain, or otherwise, and appropriated to a
public use such lands cannot again be subjected to another public
use unless such second appropriation be authorized by the legis-
lature applies only when such second public use, by reason of its
nature or character, necessarily supersedes or destroys the former
use. *pp. 266-268.*

DRAINS.—*Construction by County.*—*Collateral Attack.*—Under §5655
et seq. Burns 1894 for the construction of drains by the board of
county commissioners, when the board has once obtained jurisdic-
tion over the subject-matter, and the persons to be affected by the
proposed work, it is invested with the power to decide all questions
which may properly arise in the course of the proceeding leading
up to and including its final order, and such decision, whether right
or wrong, is binding upon all persons who are made parties to
such proceeding, until vacated by an appeal to the circuit court.
*pp. 268-270.*

SAME.—*Location on Railroad Right of Way.*—*Jurisdiction.*—*County
Drains.*—The fact that a proposed drain to be constructed under
§5655 et seq. Burns 1894 is located in part over and upon the right
of way of a railroad company will not *ipso facto* oust or devest the
board of county commissioners of its jurisdiction over the subject-
matter and render its final order in the premises void. *Baltimore,
etc., R. Co. v. North*, 103 Ind. 480, overruled in part. *pp. 270-274.*

SAME.—*Location on Railroad Right of Way.*—*Injunction.*—The
board of county commissioners has power under §5655 et seq. Burns
1894 to locate public drains when necessary, in part at least, upon
or over the right of way of a railroad company, and, having such

power, may determine the question of fact whether such second use supersedes or destroys the former use for which the land was appropriated, and such decision cannot be collaterally assailed by injunction.  *pp. 274-276.*

From the Jackson Circuit Court.  *Affirmed.*

*H. D. McMullen, H. R. McMullen, C. W. McMullen* and *O. H. Montgomery,* for appellant.

*D. A. Kochenour, B. H. Burrell* 'and *F. Branaman,* for appellees.

JORDAN, J.—Appellant commenced this action to enjoin perpetually the board of commissioners of Jackson county, together with the county auditor and others, from constructing a public ditch along and upon its right of way. A trial was had upon the issues joined between the parties, and the court upon request made a special finding of facts and stated its conclusions of law thereon adversely to the plaintiff, and over its exceptions to such conclusions and also over its motion for a new trial, rendered judgment in favor of the defendants. From this judgment the appellant railroad company appeals, and alleges in its assignment of errors that the court erred in its conclusions of law and in denying the motion for a new trial. The following may be said to be a summary of the material facts alleged by appellant in its complaint filed in the lower court: The Baltimore & Ohio Southwestern Railway Company, plaintiff below and appellant herein, is a corporation organized under the laws of this State, and since the year 1894 it has been engaged in operating a railroad which extends from the city of Cincinnati, Ohio, to the city of St. Louis, Missouri. This line runs through Jackson county, Indiana. Its right of way through said county is eighty feet wide, being forty feet in width on each side from the center of the track. At the December term, 1892, of the board of commissioners of said Jackson county, one Empsom, a resident landowner of that county, presented a petition to said board praying therein for the establishment and construction of a

public ditch in the vicinity of appellant's right of way under and in pursuance of an act of the legislature in force September 19, 1881, §§4285, 4286 R. S. 1881. The ditch as contemplated by the petitioner was to be three feet wide at its bottom and was to have a slope of six inches to each vertical foot. Such proceedings were had before the board of commissioners that it was finally ordered by said board that the ditch be established and constructed. A part of said drain was ordered to be constructed longitudinally over plaintiff's right of way to the length of 8,400 feet, and on a line about thirty-five feet from the center of its railroad track, thereby appropriating a strip of plaintiff's land to the width of from four to seven feet for the length above mentioned. It is averred that under such order of the board of commissioners the defendants are threatening to construct said ditch over and upon plaintiff's right of way, and if said defendants are not enjoined from so doing plaintiff will suffer irreparable damages. The complaint further avers that the defendants have no right, power, or authority to appropriate its said right of way for the purpose aforesaid: (1) Because no compensation or damages for such appropriation have been paid or tendered; (2) because neither the board of commissioners nor any other court had any jurisdiction or power to order that the proposed ditch or drain be established and constructed longitudinally over plaintiff's right of way, and so far as such order of the board attempts to do so it is invalid and void, and so far as the defendants are attempting to construct said ditch over the right of way in question their acts are wrongful and illegal. The material facts embraced in the special finding of facts are substantially as follows: Plaintiff is a railroad corporation organized under the laws of this State and is the owner of and engaged in operating a railroad which extends from the city of Cincinnati in the State of Ohio into and through the states of Indiana and Illinois on to the city of St. Louis in the state of Missouri. The line of this road

runs through Jackson county, Indiana, and its right of way through this county is eighty feet wide. For many years previous to the appellant becoming the owner of this road it was owned and operated by the Ohio & Mississippi Railway Company. In the year 1894 the latter company sold and transferred to the plaintiff all of its said road and rights thereto, including its right of way, and by virtue of such sale and transfer plaintiff succeeded to the ownership and control of said road, including the right of way in controversy. At the December term, 1892, of the board of commissioners of Jackson county, Indiana, one Azariah Empsom, a resident landowner of said county, presented to said board his petition whereby he prayed that said board establish and cause to be constructed a public ditch or drain, under the statutes of 1881 heretofore mentioned, said ditch to be located by beginning on the north side of a certain highway thirty-five or forty feet from the center of the track of the railroad then owned and operated by the predecessor of the plaintiff. Such proceedings seem to have been had before the board of commissioners in the matter of establishing said drain that the proper viewers were appointed by the board to view the route of the proposed ditch, locate and lay out the same, and award benefits and damages as provided by the statute. The viewers made a favorable report to the board in respect to the public utility of the drain in controversy, marked its route or location, and awarded benefits and damages accruing by reason of its construction. Their report as made to the board of commissioners and filed in the office of the county auditor disclosed that the location of the ditch as made would be over and along the right of way of the aforesaid Ohio & Mississippi Railway Company parallel with its railroad track some thirty-five or forty feet from said track extending along said right of way to a distance of 8,400 feet into White river, the outlet of the ditch. After the filing of the report of said viewers such steps and proceedings were taken and

had by the proper authorities that notice was duly given to all persons who would be affected by the proposed ditch, including plaintiff's predecessor, then the owner of said road, of the pendency of said petition before the board and of the time and place which had been fixed for the hearing thereof. The assessment of benefits made by the viewers set forth in their report to the board of commissioners included, among others, an assessment of $100 against the right of way of the aforesaid Ohio & Mississippi Railway Company assessed by said viewers on the account of benefits to said right of way by reason of the construction of said ditch.    After the giving of the required notice such proceedings were had before the board of commissioners at its December term, 1893, upon the hearing of said petition at the time fixed, as resulted in the board adjudging that all parties affected by the proposed ditch had been duly notified, and thereupon said board made an order and duly entered the same of record, to the effect that said ditch be established and constructed as designated or specified in the report of said viewers. Within the time allowed by law, Steele, whose lands were assessed with benefits, appealed from the said order of the board to the Jackson Circuit Court, wherein such proceedings were had as resulted in that court rendering a judgment sustaining and affirming said ditch proceedings, and the court ordered that said drain be established and constructed in all respects as to the route, plan, and manner as set forth and described in the report of the viewers heretofore mentioned.    Steele appealed from said judgment to the Supreme Court of this State, wherein the judgment of the lower court was affirmed. *Steele* v. *Empsom*, 142 Ind. 397.    It is further disclosed by the special finding that the auditor of Jackson county, in pursuance of the aforesaid order of the board and judgment of the Jackson Circuit Court, proceeded in the fore part of 1896 to let out, as provided by the statutes, the jobs or contracts for the construction of said ditch.    Some of the defendants to whom such

jobs had been let had commenced to dig and construct a part of the drain in dispute. The court finds that it is only the main track of appellant's road with which the drain runs parallel, and that the north edge thereof, if the drain is constructed, will not be within twenty feet of the south foot of the railroad fill, and that the construction of the ditch will not weaken the embankment which sustains the railroad track. The special finding also discloses that the line of the ditch is outside of appellant's fence standing on its right of way and is located south of the aforesaid embankment in a depression which is of uneven depth and into which water runs and stands for a time. Upon the facts so found the court stated its conclusions of law to the effect as follows: (1) The plaintiff is bound by the proceedings to construct the ditch in controversy and is bound by the places where it has been located; (2) that the law is with the defendants and that plaintiff ought to take nothing by its action.

The theory of the complaint as outlined by the material facts therein alleged seems to be to the effect that there was an entire absence of jurisdiction or power on the part of the board of commissioners of Jackson county to establish and cause to be constructed any portion of the particular ditch over and upon appellant's right of way. This lack of jurisdiction upon the part of the board is apparently the foundation of appellant's action. It is contended by its counsel that by reason of the absence of the board's power in this respect, that its order establishing a part of the drain longitudinally upon and over the right of way, as shown by the special finding, is null and void, and therefore open to an attack in this collateral action. The objections urged by appellant are not that the board of commissioners had no jurisdiction to order the establishing of a ditch, but its insistence is that the board, under the facts, had no authority to order the establishment of the particular ditch in controversy over and upon the right of way of the railroad company. The special finding discloses, as we have seen, that

the Ohio & Mississippi Railway Company, appellant's predecessor, grantor, and owner of the right of way in question, at the time the drainage proceedings were instituted, was made a party thereto by being duly notified, as required by the statute, of the pendency of the petition therein, and of the time and place fixed for the hearing before the board. It therefore affirmatively appears that the board of commissioners of Jackson county had jurisdiction over the person of appellant's predecessor from which, as shown, it subsequently acquired all of its title to the right of way in dispute. Appellant, therefore, must be deemed and held to be bound by the final order of the board under which the ditch was established, in like manner and to the same extent as was its predecessor. Consequently, unless it is apparent that there was a lack of jurisdiction upon the part of the board of commissioners in respect to the subject-matter of the proceeding, which subject-matter was the establishment and construction of a public ditch, appellant, by virtue of a well settled rule, must necessarily fail in this collateral attack, no matter how gross an error or irregularity was committed by the board in locating and establishing as it did the particular ditch over and upon the right of way in question. It can only succeed in this action by showing that the order of the board, so far as it is affected thereby, is null and void. *Perkins* v. *Hayward,* 132 Ind. 95; *Gold* v. *Pittsburgh, etc., R. Co.,* 153 Ind. 232, and cases there cited.

It is contended by appellant's learned counsel that the board possessed no power to locate any part of the ditch longitudinally upon its right of way, for the reason that when lands have been once taken by virtue of the power of eminent domain, or otherwise, and appropriated to a public use, as is the right of way in controversy, that such land cannot again be subjected to another public use, unless such secondary appropriation be authorized by the legislature. The authorities, however, affirm that this rule only applies

when such second public use by reason of its nature or character necessarily supersedes or destroys the former use. *Gold.* v. *Pittsburgh, etc., R. Co.,* 153 Ind. 232; *Steele* v. *Empsom,* 142 Ind. 397. In *Gold* v. *Pittsburgh, etc., R. Co., supra,* we had occasion fully to consider the application and enforcement of the rule for which appellant contends. This latter case was an action whereby the railroad company sought to enjoin the opening of a public highway over its yards and right of way. The highway in that case had been laid out and ordered to be opened in a proceeding instituted before the board of commissioners of Marion county for that purpose. The railroad company owning and controlling the right of way, and the predecessor of the appellee in that case, had been made a party to such highway proceedings by due notification, but neglected to appear before the board and urge any objections to the proceeding so far as it affected its right of way. We held in that appeal that the railroad company was bound by the order of the board and could not successfully assail it in that collateral action. In considering the principle in relation to the secondary appropriation of lands to a public use, we said on page 242 of the opinion in that case: "We do not controvert the general rule asserted in the decisions of this court cited by appellee, to the effect that where land is once appropriated, by virtue of the doctrine of eminent domain, to an important public use, it cannot again be devoted to another public use wholly inconsistent with the former, and which, under the circumstances of the particular case, must necessarily supersede or destroy such former use, unless it is shown that the right to subject the land to the second appropriation or use is authorized by an act of the legislature, either expressly or by necessary implication. That this rule is applicable, when properly invoked, to prevent the location and construction of streets or other public highways over or along the land and tracks of a railroad company, when such location and construction would necessarily supersede, or be

destructive of, the necessary use of such land or tracks of the company in the operation of its railroad, is well affirmed by the authorities.   [Citing authorities.]   That the jurisdiction of the board of commissioners over the subject-matter, in a proceeding, under the statute, to locate or change a public highway, is not devested by reason of the fact that such proposed location or change will appropriate to the use of such highway any part of the right of way of a railroad company, is recognized by the decisions of this court. *Crossley* v. *O'Brien,* 24 Ind. 325, 87 Am. Dec. 329.   In this latter case it is said that the railroad company, when its property is so appropriated, must be paid, the same as any other person, and that such compensation, in the very nature of things, becomes an element to be considered in determining the question of the public utility of such highway.   The question, as stated by Judge Frazer, is, 'Will it cost the public more than it will be worth ?' "   The holding in that case in respect to the application and force of the rule in controversy must exert a controlling influence over the decision of the question in the case at bar.   Jurisdiction over the establishment of the particular proposed public drain, under the proceedings instituted, was by the statute lodged in the board of commissioners of the county of Jackson.   See §§5655, 5656 Burns 1894; *Cauldwell* v. *Curry,* 93 Ind. 363.   The filing of the petition provided by §5656 invokes the jurisdiction of the board.   After such jurisdiction has been once acquired mere errors or irregularities in the proceeding and order of the board will not, as we have previously seen, justify a collateral attack upon the part of the person aggrieved thereby, who was a party to such proceeding.   The remedy is by appeal to the circuit court under the provisions of §5671 Burns 1894.   Even though the order could be said to be void by reason of an absence of jurisdiction over the subject-matter, still an aggrieved party may appeal from such void order to the circuit court and therein secure adequate relief.   *Louisville,*

*etc., R. Co.* v. *Lockridge,* 93 Ind. 191; *Jones* v. *Cullen,* 142 Ind. 335.

It is true that the drainage statute in question does not expressly provide that the route of a contemplated drain may be over the land or right of way of a railroad company. By §5656, *supra,* it is provided that the petition shall set forth a general description of the beginning and *terminus* of the ditch. §5659 Burns 1894 authorizes the viewers, if they deem it best, to vary from the route or line described in the petition, provided they begin the ditch or drain at the point described and follow the described line or route as near as practicable. Under the provisions of §5661 Burns 1894, the viewers are authorized to establish the route of the ditch in the event they find that the one proposed in the petition is not such as best to effect the object sought by the construction of the drain. This latter section further provides that in all cases in which the route proposed is along highways already established the viewers shall then locate the ditch at a sufficient distance from the center of such highways to admit of a good road along such central line. The viewers under this section, in viewing the line of the drain, are not permitted materially to depart from the terminal points described in the petition.

By §5656 Burns 1894 the viewers are empowered to apportion to each parcel of land and to each corporated road or railroad a share of the proposed work in proportion to the benefits which will result to each by reason of the improvement.

Section 5658 Burns 1894 provides for the assessment of benefits upon all lands benefited by the ditch, and §5660 Burns 1894 provides for the assessment of damages sustained by any person by reason of the construction of the ditch.

Section 5665 Burns 1894 authorizes any person interested in the location of the proposed work to appear before the board of commissioners at or before the time fixed for

hearing the petition, and file a remonstrance against the ditch, as located by the viewers on and across his lands, by setting forth in such remonstrance his aggrievance, and any person deeming his assessment of benefits too high, or the damage allowed him too low, may also remonstrate for such reasons.

An examination of the statute discloses that it is quite broad and comprehensive in its terms and provisions, and it is evident, in our opinion, that the legislature intended to confer upon the proper boards of commissioners plenary power or jurisdiction in the establishment and construction of a public ditch as therein provided. Therefore, under the general power so conferred, when the board has once obtained jurisdiction over the subject-matter and the persons to be affected by the proposed work, by the method of procedure prescribed by the State, it must necessarily be considered as being invested with the power, in the first instance, to decide all questions or matters which may properly arise in the course of the proceedings leading up to and including its final order, and such decision or order, whether right or wrong, must be deemed to be binding upon all persons who are properly made parties to such proceedings, until vacated by an appeal to the circuit court. It certainly cannot be asserted that under any and all circumstances, conditions, and state of facts in a proceeding to establish a public ditch in pursuance of this drainage statute, that the location of a portion of the route of the proposed drain, longitudinally or otherwise, over and upon the lands or right of way of a railroad company, will *ipso facto* oust or devest the board of its jurisdiction over the subject-matter and therefore render its final order in the premises void.

We think it may reasonably be presumed from the very nature and use of a public ditch, that if of ordinary dimensions it may be constructed and maintained over or upon the right of way of a railroad company, if located sufficiently distant from the roadbed, without destroying or even

impairing such right of way.  In fact, under §5656, *supra,* authority is given to the viewers, when they find it necessary, to provide for what is commonly denominated a "blind ditch" by running the proposed drain underneath the ground through tile.  It appears that the ditch in question was located quite a distance in feet from the bed of the railroad track, and a part of the drain, at least, ran through a sag or depression in the ground on appellant's right of way, in which depression water "at times would stand."  The railroad company, it seems, instead of being damaged or deprived of the use of its right of way by reason of the location of the ditch, was benefited thereby, as benefits to the amount of $100 were assessed against it.  It is true that if it should appear to the board of commissioners in the particular case that the location and establishment of a public drain over or upon the right of way of a railroad company would necessarily result in superseding or destroying the use to which such right of way was appropriated, it would, under such circumstances, be wrong, and an abuse of power upon the part of the board of commissioners to subject the right of way to the location and use of the proposed drain. But certainly it could not be asserted, under the broad provisions of the drainage statute referred to, that such a wrong or abuse of power on the board's part would constitute a jurisdictional defect in its final order establishing the work, and thereby render such order void and open to a collateral attack.  The determination of the question as to what would be the result of appropriating a portion of the right of way to the use of the ditch proposed would surely be a matter, under the law, to be determined from the facts by the board at the hearing of the petition and report of the viewers, and a railroad company aggrieved by the action or decision of the board upon that question could appeal for relief from the final order to the proper circuit court, and from the judgment of the latter court, if it desired, to the Supreme Court of this State.

In the case of *Steele* v. *Empsom,* 142 Ind. 397, the appellant therein was a remonstrator in the identical drainage proceedings out of which the case at bar arises. She appealed from the order of the board to the Jackson Circuit Court and from the judgment of that court to this court. It was contended by appellant in that appeal, that under the rule urged by counsel for appellant in this case that the board of commissioners had no power or authority to establish and locate the ditch over the right of way now involved. This court in answering the contention of the appellant in that appeal, on page 406 of the opinion, said: "The rule urged by appellant only applies when the second public use would naturally injure or destroy the uses for which such right of way was employed, and when the same could not exist without impairing the first uses. [Citing authorities.] It is not claimed, nor does the evidence show, that the location of the drain upon the right of way would, in any way, interfere with the uses of the railroad company. On the contrary, it was found by the viewers, reviewers, jury, and adjudged by the lower court, that the same would be a benefit to said right of way. The railway company named was a party to the proceeding, and assessed with benefits, and raised no objection to such location or assessment. * * * The railroad company, having been a party to the proceedings, and having raised no objection to the same, cannot successfully assail such location of the ditch, even if erroneously made. *Perkins* v. *Hayward,* 132 Ind. 95."

Appellant's predecessor was afforded an opportunity to appear before the board at the time of the hearing of the petition and consideration of the report of the viewers, and urge, under a remonstrance, its objection to the location of the ditch over or upon its right of way, and in the event of an adverse decision an adequate remedy, as previously shown, was provided by an appeal from the final order of the board to the Jackson Circuit Court. It neglected in any manner to contest the proceedings before the board, and

both it and appellant seem to have delayed until after the contracts for the construction of the drain had been let and the construction thereof had commenced before this action to enjoin was instituted. Under no view of the case can it be asserted that the complainant herein has exercised any great degree of diligence. Counsel for appellant, in support of their contention that the order of the board was void for the reason that it had no jurisdiction or power to declare the proposed drain established upon appellant's right of way, refer to the case of *Baltimore, etc., R. Co.* v. *North,* 103 Ind. 486. That was an action to enjoin the construction of a public ditch, a portion of which, under the order of the Marshall Circuit Court, had been located over and upon the railroad company's right of way. It may be conceded that the decision in that appeal fairly sustains appellant's contention. That case, however, in respect to the point raised by appellant herein, has been criticised as unsound, and properly so, we think, by a prominent text-writer. Van Fleet's Coll. Att. §142. The holding in the North case may be said to be incompatible with the decision of this court in *Gold* v. *Pittsburgh, etc., R. Co.,* 153 Ind. 232. The learned judge who prepared the opinion in the North case seems, after a hasty consideration, to have reached the conclusion that, by reason of the mere fact that a portion of the proposed ditch was located over and upon the railroad company's right of way, the circuit court which, under the statute, had been given jurisdiction over the subject-matter of the proceeding to construct the ditch, was thereby devested of such jurisdiction, and that its judgment in declaring the proposed ditch established was not erroneous only, but actually and absolutely void. We are unwilling to accept or be bound by the broad doctrine asserted in that case, and so far as the decision therein conflicts with our holding in the case at bar it must be deemed to be overruled. In the appeal of *State* v. *Town of Vernon,*

25 Vt. 244, a public highway had been established by the proper county court and ordered to be opened in part upon the right of way or grounds of a railroad company.    The Town of Vernon was a party to the proceedings before the county court.    In a criminal prosecution against said town for its failure to open the highway as ordered by the county court, the town sought to justify its failure upon the ground that the highway had been laid out in part upon the right of way or grounds of the railroad company.    The supreme court of Vermont in that appeal, however, held that the town was bound by the judgment of the county court and that it could not repudiate the effects of such judgment in a collateral manner.

The special finding of facts in the case at bar supports the court's conclusion thereon and the evidence fairly sustains the special finding.    It therefore follows that the trial court did not err in its conclusions of law or in denying appellant's motion for a new trial.    The judgment is therefore affirmed.

## ON PETITION FOR REHEARING.

JORDAN, J.—Appellant under its petition for a rehearing strenuously contends that we erred in the original opinion in holding that the order of the board, under which the ditch in question was located in part upon lands embraced in its right of way, was not absolutely void.    The conclusion which we reached at the former hearing was to the effect that the statutes authorizing the establishment of public ditches by proceedings before the board of commissioners, when given a fair and reasonable construction, must be held to confer upon such boards the power to locate such ditches when necessary, in part, at least, upon or over the lands belonging to the right of way of a railroad company. Consequently the board having such jurisdiction or power, the proposition as to whether the secondary use of the right of way by the location and establishment of the ditch thereon is so inconsistent with the use to which it had already

been subjected as necessarily to supersede or destroy such latter use, became a question, under the facts and circumstances in the first instance, for the determination of the board of commissioners.   Inasmuch, therefore, as the order of the board was not void by reason of the absence of jurisdiction upon the part of that tribunal, it was not open to be collaterally assailed by injunction, but appellant's remedy was by an appeal to the circuit court.   We conceded the doctrine for which appellant contended, that its right of way could not be again taken for a second public use, where the two uses were so incompatible with each other that the secondary one would necessarily supersede or destroy the former, unless such second appropriation was either expressly or impliedly authorized by the legislature.   We are not prepared, however, to hold that in the establishment of a public drain by the board of commissioners under the plenary powers conferred by the statutes authorizing the same, that such board has no jurisdiction or power to decide as to whether the two uses can coexist.   The location and use of a public drain upon a part of a railroad company's right of way, and the location and use of a public highway or street thereon, present quite different questions.   It is certainly manifest that the use of such grounds for a ditch cannot be held in all cases as a legal proposition necessarily to supersede or destroy the use of the same grounds by the railroad company in the maintenance and operation of its road.   A public drain, as stated in the original opinion, may be, when deemed necessary, constructed and used as a "blind ditch".   A case might be easily conjectured where the location, in part, of a drain, under the statute, upon or over the right of way of a railroad, would not even work an inconvenience to the company in the operation of its road.   Conceding that the statute does not by an express provision authorize the establishment of a drain upon or over the right of way of a railroad, still, as has been shown, boards of commissioners are invested thereunder with complete or full jurisdiction

over the subject-matter without any express or implied restriction against locating any part of the improvement or work over or upon the grounds of a railroad company. The question then as to whether the two uses to which such lands are appropriated can coexist, without the second one superseding or destroying the former, becomes one of fact to be determined, as we have said, in the first instance by the board, under the circumstances in each case. In fact, there are authorities which affirm that the grant of a franchise is of no higher order and confers no more sacred title than a grant of land to an individual; and when public necessity requires it the one as well as the other may be taken for public purposes upon making the necessary and proper compensation. See cases cited in *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174; *Richmond, etc., R. Co.* v. *Louisa R. Co.,* 13 How. 71; *Chicago, etc., R. Co.* v. *Town of Lake,* 71 Ill. 333; *Philadelphia, etc., R. Co.* v. *City of Philadelphia,* 9 Phila. 563.

The broad doctrine contended for by appellant in this appeal would, in our opinion, at least have a tendency to impede or hinder boards of commissioners in the exercise of their powers conferred by the statute in locating and establishing public drains, which are so essential to the improvement of the country. The construction we have given to the laws pertaining to such public improvements tends, in our judgment, to promote equity and justice, and will work no injury to railroad corporations.

Petition overruled.